J-S51019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| EMANUEL RIVERA | : | |
| Appellant | : | No. 478 MDA 2020 |

Appeal from the PCRA Order Entered January 31, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006999-2012

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| EMANUEL RIVERA | : | |
| Appellant | : | No. 479 MDA 2020 |

Appeal from the PCRA Order Entered January 31, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007000-2012

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED FEBRUARY 17, 2021**

Emanuel Rivera appeals from the order entered denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Rivera claims that the court erred by not appointing him PCRA counsel and that his trial counsel was ineffective for failing to request a jury instruction and for failing to object to the admission of his co-defendant's statements. We affirm.

In June 2013, a jury convicted Rivera of first-degree murder, robbery, and conspiracy to commit robbery[1] for the murder and robbery of Felipe Bernabe-Martinez, and conspiracy to commit burglary and conspiracy to commit robbery for separate events. Rivera had a joint trial with his co-defendant, Eric Camacho-Rodriguez. The trial court set forth the trial testimony and evidence, which we incorporate herein. Trial Court Opinion, filed June 9, 2020, at 2-9 ("1925(a) Op.") (quoting Trial Court Opinion, filed Oct. 30, 2014, at 2-17).

Relevant to this petition, a person sitting on a porch across from where the murder occurred, Nick Drayden, testified at trial, and described two individuals he saw that night. N.T., 6/4/13-6/7/13, at 177-82. He testified that the shooting occurred at nighttime, between 9:00 p.m. and 10:00 p.m., near a park. *Id.* at 178. He said he saw two males, who looked to be 16 or 17 years of age, walking across the park. *Id.* at 179-80. One had a T-shirt on his head like a turban and both wore jeans and "wife beaters." *Id.* at 180. Drayden testified that one was a little shorter than Drayden, who was 5'9", and the same individual had a lighter skin tone than Drayden. *Id.* at 180-81. He said, however, that he did not get a good look at either individual's face. *Id.* at 182. Drayden did not make an in-court identification of Rivera or Camacho-Rodriguez as one of the assailants.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), and 903, respectively.

At trial, Detective Andy Baez testified about his interview of co-defendant Eric Camacho-Rodriguez. During the testimony, Baez changed references to Rivera contained in Camacho-Rodriguez's statement to the "other person":

> Q. Okay. Now, I know you started off by indicating that he had -- you asked him about the backpack and the incident in Bantz Park. What about --did you ask him anything about what occurred by Girard Park?
>
> A. He said that he was not there with the other person and there were people that could tell the police that he was on George Street.
>
> Q. Okay. Just so we're all clear, the incident by Girard Park, that was what occurred on May 28th, 2012 involving Felipe Bernabe, correct?
>
> . . .
>
> Q. Did he indicate if -- any further information?
>
> A. He said that he was not with the other person.
>
> Q. Okay. What happened next?
>
> A. Why would the other person say you were there?
>
> . . .
>
> A. He and the other person were together before the incident happened and he continued to maintain that he was not there at the time of the shooting.
>
> Q. What happened next?
>
> A. He was told that a person we spoke with said that there was a person in the park that matched his general description that includes the little afro pony puff.
>
> Q. Okay. Then what happened?
>
> A. He was then told that a person we spoke with indicated that he was behind the shooter at the time of the shooting, and he said I was not there.

. . .

A. He was asked if the other person that said he was there was a liar. He indicated that the person is not a liar; however, he denied being there.

Q. Okay. If you can continue, detective.

A. He was asked why the other person would say that. He didn't know, but that he was not there in that moment when the other person shot him and the other person was telling the truth about the rest. What part was the other being truthful about? The –

. . .

Q. You can continue.

A. That the other person shot him. How do you --

. . .

A. So that day he was scared and he told the other person that he did not want to do it and the other person said that he was going with his friends by himself.

. . .

A. He was asked who his friends were. He said, his statement was, he said that there was a skinny tall black boy, a white skinny boy, and one with long hair. Those were the boys that left with him.

Q. And if you can --

A. He was asked if he knew their names and he said no.

Q. What happened next?

A. He said that the other person told him at the time of the shooting he didn't want to do it.

Q. Okay.

A. He also said that the black boy told him if you don't do it, I will do it, so they tried to make the other person look like a pussy so the other person did it. So in one moment, the other person got in a panic and the other person shot him.

Q. Did he indicate what the other person was trying to do?

A. He said that the other person was trying to get some money so we could eat.

Q. Did he indicate whether the person gave up the money?

A. He shook his head no.

Q. Okay. What happened next?

A. He indicated that the other person shot him. He was asked, why him? He said that he didn't know and he said again that he was not there.

Q. Did you further inquire as to why that particular person was chosen?

A. We asked him, why was the victim chosen? Did you know him? I don't know. They went and did it. The other person told me that he or she was scared at first and then he or she was running. The other person hid for like two days. Then the other person was hiding with me in an abandoned house where he, Eric Camacho, used to live. He then indicated that he and the other person stayed there for a couple nights and tried to survive until Friday.

Q. Okay.

A. After then, the other person was going to New York and Camacho was going to go somewhere with his mother and family. . . .

Q. Okay. What happened next?

A. With reference to today, which would be the 31st, he said that the other person told him that something was going to go so that they could have money and they could eat.

Q. Okay.

A. He said that the other person didn't explain everything. He or she just said it's money. He then indicated that he needed money to eat so he went with the other person and he said that he was carrying the book bag the whole way. He said that he knew the police saw him with the book bag. He said that they were in the park and they were waiting for some of the other person's friends. He said that they were

the ones that did the Girard Park incident with the other person. He said that he knew that the guy was dead.

Q. And let me just stop you. The guy as in Felipe Bernabe?

A. That is correct.

Q. Okay.

A. He said that the other person was thinking about it and he or she was thinking that he or she killed him. He was asked if he read the newspaper. He shook his head negative. He said that the other person thought they killed him because the other person hit him with the gun and was like, I think I killed him. He indicated that the other person told him that.

Q. Okay. Now, did you or Detective Spence ask how Mr. Camacho-Rodriguez ended up with the book bag?

A. We did.

Q. How did he respond?

A. The other person left it with a friend of ours and he or she was holding a bag with the bullets and the gun. He indicated that he knew the bullets and gun were inside the bag. He was asked how he got the bag. He indicated that friend brought it to him on 409 South George Street at around 6 p.m. . . .

N.T., 1/2/2013, at 544-557.

The trial court gave the following limiting instruction to the jury:

There's another rule that restricts the use by you the jury of evidence offered to show that the defendants, Emanuel Rivera and Eric Camacho-Rodriguez, made a statement concerning the crime charged. A statement made before trial may be considered as evidence only against the defendant who made that statement. Thus, you may consider the statement as evidence against the defendant speaking if you believe he made the statement voluntarily. You must not, however, consider that statement as evidence against the other defendant. You must not use the statement by one defendant in any way against the other defendant.

- 6 -

*Id.* at 694-95.

During jury instructions, the court did not give a *Kloiber*[2] charge, and Rivera's counsel did not ask for one. The jury found Rivera guilty as above, and the court sentenced Rivera to life imprisonment for the murder conviction and a consecutive four to eight year term of imprisonment for the conspiracy to commit robbery conviction. The court found the conviction for conspiracy to commit burglary merged and imposed no further penalty for the robbery and second conspiracy to commit robbery conviction.

Rivera filed a direct appeal and this Court affirmed the judgment of sentence in December 2014. Rivera's right to file a petition for allowance of appeal was re-instated, and the Pennsylvania Supreme Court denied the petition for allowance of appeal in July 2016.

In June 2017, Rivera filed the subject PCRA petition. The court appointed counsel, who filed a *Turner/Finley*[3] no-merit letter and a motion to withdraw as counsel. The court granted the motion to withdraw in December 2018. *See* Order, filed Dec. 19, 2018, at ¶ 3. The court did not rule on the merits of the petition at that time or issue a Pa.R.Crim.P. 907 notice of intent to dismiss. Subsequently, in January 2019, Rivera responded to counsel's no-merit letter.

In July 2019, Rivera sent a letter to the court inquiring about the status of his PCRA petition, and the PCRA court scheduled a hearing. Order, dated

---

[2] *Commonwealth v. Kloiber*, 106 A.2d 820, 826-27 (Pa. 1954).

[3] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Sept. 23, 2019; Rescheduling Order, filed Dec. 4, 2019. The order informed Rivera that he had the right to retain counsel or represent himself, but denied his request for new counsel as his "appointed counsel . . . found no merit in his petition, which the court affirmed." Order, dated Sept. 23, 2019.

At the hearing, Rivera agreed that his response to counsel's no-merit letter claimed trial counsel was "ineffective because he didn't request various jury instructions, didn't raise the voluntariness of the statement, didn't investigate the circumstances how the police obtained the statements, didn't impeach [a trial witness], didn't call Jose Nieves, didn't object to the reading of a redacted statement from a co-defendant, and [failed] to request that the jury be polled." N.T., 1/31/2020, at 7-8. The court found that there was no merit in the claims, for the reasons counsel had outlined in the *Turner/Finley* letter. *Id.* at 9.

Following the hearing, the court entered an order stating that it had not previously entered a final order on the case. The order noted that the court had found the issues had no merit, and therefore permitted counsel to withdraw. Order, filed Jan. 31, 2020. The court concluded that it "adopted the position of PCRA Counsel in the *Turner/Finley* letter that there is no arguable merit to [Rivera's] PCRA [petition]," and dismissed the petition. *Id.* The court

issued the order dismissing the petition without issuing a Rule 907 notice.

Rivera filed timely notices of appeal.[4]

Rivera raises the following issues:

1. Whether the PCRA court has committed an abuse of discretion, where the PCRA court has deprived [Rivera] of statutorily guaranteed counsel upon review of [Rivera's] first timely filed PCRA petition?

2. Whether the PCRA court has committed an abuse of discretion, where the record reflects that [Rivera] was denied his constitutionally guaranteed right to confront witnesses, when [Rivera's] co-defendant provided an inculpatory statement which was admitted at trial but co-defendant did not testify?

3. Whether the PCRA court has committed an abuse of discretion in . . . not determining that trial counsel was ineffective for failure to seek a **Kloiber** instruction where the witness was not in a position to clearly observe the assailant; he was not able to positively identify the assailant; and never identified [Rivera]?

Rivera's Br. at 5 (suggested answers and unnecessary capitalization omitted).

In his first issue, Rivera claims the court erred in not appointing him new counsel. An unrepresented defendant who has satisfied the judge that the he or she is unable to afford or otherwise procure counsel has a right to

_____

[4] The court dismissed the petition on January 31, 2020. To be timely, Rivera had to file his notices of appeal by March 2, 2020, as 30 days from January 31, 2020 was Sunday, March 1, 2020. **See** 1 Pa.C.S.A. § 1908 (extending deadline to first weekday if final date falls on a weekend). Although the court did not docket the *pro se* notices of appeal until March 11, 2020, the notices were dated February 27, 2020, and included an envelope postmarked March 2, 2020. Under the prisoner mailbox rule, the notices of appeal were timely. **See Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa.Super. 2006) ("Pursuant to the 'prisoner mailbox rule,' a document is deemed filed when placed in the hands of prison authorities for mailing").

appointed counsel on a first PCRA petition. Pa.R.Crim.P. 904(C); **Commonwealth v. Laboy**, 230 A.3d 1134, 1138 (Pa.Super. 2020). On a second or subsequent PCRA petition, the court "shall appoint counsel to represent the defendant" "when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908." Pa.R.Crim.P. 904(D). Rule 908 requires an evidentiary hearing only when "the petition for post-conviction relief or the Commonwealth's answer, if any, raises material issues of fact. . . ." Pa.R.Crim.P. 908(A)(2). Even if a PCRA petitioner is entitled to counsel, that right is satisfied where the court appoints counsel who then withdraws pursuant to **Turner/Finley**. **See Commonwealth v. White**, 871 A.2d 1291, 1294 (Pa.Super. 2005).

Here, Rivera was not entitled to counsel. This was his "first" PCRA petition, as it was the first following the denial of his *nunc pro tunc* petition for allowance of appeal, and, as required, the court appointed counsel. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa.Super. 2013). However, PCRA counsel filed a **Turner/Finley** letter, and the court granted his petition to withdraw. This procedure satisfied Rivera's right to counsel under Rule 904(C). **See White**, 871 A.2d at 1294.

Rule 904(D) affords Rivera no relief as that rule by its terms applies only to a second or subsequent PCRA petition and, in any event, no evidentiary hearing was required. Although the PCRA court held a "hearing," it was not an evidentiary hearing. The court had not concluded that the petition raised any

- 10 -

material issues of fact. Rather, the court had found the petition to be meritless. The court held the hearing after learning it had made a procedural misstep in not sending Rule 907 notice of its intent to dismiss the petition, and it held the hearing to give Rivera an opportunity to place any objections on the record. Rivera's first issue lacks merit.

We next address Rivera's claim that the PCRA court erred in dismissing his claims for relief – that trial counsel was ineffective for failing to object to the use of his co-defendant's statements and for failing to request a *Kloiber* charge. "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

We presume counsel was effective and a petitioner bears the burden of pleading and proving otherwise. *See Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa.Super. 2017). A petitioner may overcome the presumption by pleading and proving all of the following: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011). Prejudice exists in this context if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002).

"There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa.Super. 2008).

Rivera claims the PCRA court erred in rejecting his claim that counsel was ineffective for failing to object to Detective Baez's testimony repeating Camacho-Rodriguez's statements that inculpated Rivera. He argues that replacing Rivera's name with "other [person]" violated his right to confront witnesses and violated *Bruton v. United States*, 391 U.S. 123 (1998). He argues the incriminating extra-judicial statements of Camacho-Rodriguez told the jury Rivera committed the murder, and claims the statements made it clear that the "other [person]" participated in the crime and "[t]here can be no equivocation that the jury inferred that [Rivera] was the 'other [person].'" Rivera's Br. at 19. He claims that this error prejudiced him, and requests a new trial or, in the alternative, that we remand to the PCRA court for a hearing on the issue.

In *Bruton*, 391 U.S. at 126, the United States Supreme Court held the admission at a joint trial of a co-defendant's confession that incriminated a defendant violated the Confrontation Clause of the Sixth Amendment, even if the court issued a cautionary instruction. The Court refined *Bruton* in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), which held that the

admission of a co-defendant's statement that redacted the defendant's name did not violate the Confrontation clause. The **Richardson** court reasoned there was an "important distinction between co-defendant confessions that expressly incriminate the defendant and those that become incriminating only when linked to the other evidence properly introduced at trial." **Commonwealth v. Travers**, 768 A.2d 845, 848 (Pa. 2001) (citing **Richardson**, 481 U.S. at 208).

In **Travers**, the Pennsylvania Supreme Court applied these precedents. There, the prosecution admitted into evidence the co-defendant's statement to the police, but it was "redacted to replace any specific reference to appellant by name with the neutral term, 'the other man.'" **Id.** at 846. The trial court had also issued a cautionary instruction to the jury that it use the statement only against the co-defendant. **Id.** The Court found that in those circumstances, such a redaction does not violate the Confrontation Clause. **Id.** at 851. The Court explained that "the redacted statement could become incriminating only through independent evidence introduced at trial which established the defendant's complicity and, even then, only if it is assumed that the jury ignored the court's charge." **Id.**

Here, the PCRA court concluded Rivera's claim failed because, under **Travers**, using the phrase "other person" does not violate a defendant's right to confront witnesses where the jury also received a cautionary instruction that they could not use the confession against the co-defendant. 1925(a) Op. at 18 (citation omitted).

- 13 -

The PCRA court's findings are supported by the record and it did not err in denying Rivera's claim, pursuant to *Travers*. We further conclude that Rivera has not sufficiently alleged prejudice. The jury also heard Rivera's own confession to the murder, and additional overwhelming evidence, that, even if the jury had not heard Camacho-Rodriguez's statements, or the court had scrubbed all references to the "other person" from the statements, we cannot say that there is a reasonable likelihood the outcome would have been different. Further, we conclude the PCRA court did not err in dismissing the claim without a hearing, as there are no issues of material fact.

In his last issue, Rivera claims the PCRA court erred in dismissing his claim that trial counsel was ineffective for failing to request a *Kloiber* charge. He claims that this instruction was required due to the testimony of Drayden, who said that the lighting affected his identification and that he could see the assailants' skin color but did not clearly see their faces. Rivera seeks a new trial or, in the alternate, a remand for an evidentiary hearing.

In *Kloiber*, the Pennsylvania Supreme Court held that a court should issue a cautionary instruction following certain identification testimony:

> [W]here the witness [was] not in a position to clearly observe the assailant, or he [is] not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826-27. Where, however, "a witness does not identify the defendant in court or declines to identify the defendant in court, a *Kloiber*

- 14 -

instruction is not required." **Commonwealth v. Colon**, 230 A.3d 368, 376 (Pa.Super. 2020) (citing **Commonwealth v. Sanders**, 42 A.3d 325, 335 (Pa.Super. 2012)).

Here, the PCRA court concluded that a **Kloiber** instruction was not required as Drayden did not identify Rivera, but merely provided a "hesitant description of skin color, height, clothing, and language," and testified that he could *not* identify the assailants. 1925(a) Op. at 17. The PCRA court's conclusions are supported by the record, and it did not err in finding that no **Kloiber** instruction was required and, therefore, counsel was not ineffective. Further, the court did not abuse its discretion in dismissing the claim without an evidentiary hearing, as there were no issues of material fact.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/17/2021

- 15 -