J-S10038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID CHARLES BEAN | : | |
| | : | |
| Appellant | : | No. 1032 MDA 2021 |

Appeal from the PCRA Order Entered July 16, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0002186-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID CHARLES BEAN | : | |
| | : | |
| Appellant | : | No. 1033 MDA 2021 |

Appeal from the PCRA Order Entered July 16, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001868-2014

BEFORE:  MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED AUGUST 17, 2022**

Appellant, David Charles Bean, appeals from the order denying his first

petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

This PCRA matter arises out of Appellant's convictions at two trial court dockets, for which he was tried concurrently. At CP-41-CR-0002186-2013 ("2186-2013"), Appellant was charged with burglary and related offenses after he was apprehended while breaking into a residence on Pearson Avenue in Loyalsock Township, Lycoming County. At CP-41-CR-0001868-2014 ("1868-2014"), the Commonwealth charged Appellant with offenses concerning 18 additional burglaries or attempted burglaries.

The matters were consolidated for trial, which took place between May 30 and June 2, 2017. At trial, the Commonwealth played a video recording of an April 8, 2015 statement that Appellant provided to Lycoming County detectives prior to trial; in the video, Appellant incriminated himself in several of the burglaries for which he was charged. N.T., 5/31/17, at 3-4. The Commonwealth also called as a witness a geographic information systems ("GIS") analyst who analyzed the cell-site location information ("CSLI") obtained from Appellant's cell phone service provider; this data showed Appellant to be located in the vicinity of several of the burglarized properties at the time of the break-ins. N.T., 6/1/17, at 68-88.

At the conclusion of trial, the jury found Appellant guilty of one count each of burglary, criminal conspiracy, criminal trespass, possession of an instrument of crime, resisting arrest, loitering and prowling, and criminal

mischief at 2186-2013.[2]  At 1868-2014, Appellant was convicted of eight counts of burglary, one count of attempted burglary, and numerous additional counts of theft by unlawful taking, receiving stolen property, criminal use of a communication facility, and criminal mischief.[3]  On June 5, 2017, the trial court imposed an aggregate sentence of 32 years and 3 months to 64 years and 6 months of imprisonment.

Appellant filed a direct appeal, arguing that the trial court erred by denying his motion to suppress and that his sentence was excessive.  On September 7, 2018, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Bean*, Nos. 1512 & 1513 WDA 2017, 2018 WL 4270175 (Pa. Super. filed September 7, 2018) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which our Supreme Court denied on March 6, 2019. *See Commonwealth v. Bean*, 203 A.3d 980 (Pa. 2019) (*per curiam* order).

Appellant filed a timely *pro se* PCRA petition on June 25, 2019.[4]  Counsel was appointed to represent him, and on November 13, 2019, PCRA counsel

---

[2] 18 Pa.C.S. §§ 3502(a)(1), 903, 3503(a)(1)(ii), 907(a), 5104, 5506, and 3304(a)(5), respectively.

[3] 18 Pa.C.S. §§ 3502(a)(2), 901(a), 3921(a), 3925(a), 7512(a), and 3304(a)(5), respectively.

[4] Appellant's judgment of sentence became final on June 4, 2019, the last day upon which he could have filed an appeal in the United States Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3); U.S.Sup.Ct.R. 13.  As Appellant's petition was filed within one year of that date, the petition was timely.  *See* 42 Pa.C.S. § 9545(b)(1).

filed an amended PCRA petition. On May 26, 2020, the PCRA court issued an order pursuant to Rule of Criminal Procedure 907 indicating its intention to dismiss the amended PCRA petition without holding an evidentiary hearing. After Appellant filed a response to the Rule 907 notice, the trial court entered an order on July 2, 2020 scheduling a hearing on Appellant's PCRA claims related to the collection of CSLI information but denying his request for a hearing with respect to his claim that trial counsel was ineffective for failing to request a jury instruction regarding the voluntariness of his statement to the detectives. Hearings were held on September 25, 2020 and March 4, 2021. On July 16, 2021, the PCRA court entered an opinion and order denying the petition. Appellant thereafter filed this timely appeal.

Appellant raises the following issues before this Court:

I. Did the [PCRA] court commit an abuse of discretion and/or error of law in denying [Appellant] a hearing on the ineffective assistance of counsel claim related to the failure of trial counsel to request a jury instruction on the voluntariness of defendant's statement to the police?

II. Did the [PCRA] court commit an abuse of discretion and/or error of law in finding that [Appellant's] trial counsel was not ineffective in failing to challenge the Commonwealth's use of [Appellant's] cell phone records to identify his location without a validly issued and untainted warrant?

III. Did the [PCRA] court abuse its discretion and/or commit an error of law in finding that the use of historical cell site information (via [Appellant's] cell records) did not violate the constitution, such that under the circumstances, the truth determining process was so undermined that no reliable adjudication of guilt or innocence could have taken place?

- 4 -

Appellant's Brief at 4 (unnecessary capitalization and trial court disposition omitted).

We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and its legal conclusions are free of error. *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020). When supported by the record, the PCRA court's factual findings and credibility determinations are binding on this Court, but we review the lower court's legal conclusions under a *de novo* standard of review. *Id.* Our scope of review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. *Id.*

With respect to Appellant's argument that the PCRA court erred by not holding a hearing as to his first claim, we note that

> [t]he PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations and quotation marks omitted).

Appellant's first two issues relate to claims of ineffective assistance of his trial counsel. In assessing an ineffectiveness claim under the PCRA, we

begin our analysis with the presumption that counsel has rendered effective assistance. ***Commonwealth v. Reid***, 259 A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

***Id.*** (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. ***Id.***

Appellant first argues that the PCRA court abused its discretion by not holding a hearing on his claim that his trial counsel was ineffective for failing to request a jury instruction relating to the voluntariness of his April 8, 2015 statement to detectives. Appellant contends that the PCRA court failed to recognize factors related to the voluntariness of his statement—namely the representations to him by the detectives that he would not receive a benefit from cooperating unless he confessed and the advice of his counsel to cooperate in order to achieve a favorable deal[5]—and the PCRA court was required to hold a hearing on the issue of whether the jury should have received the voluntariness instruction. Appellant claims that he was

---

[5] ***See*** N.T., 6/1/17, at 158-59 (Appellant testifying that he was "trying to make a deal" and "cooperate" by providing information on unrelated investigations and that he spoke to his attorney during a break in the meeting with detectives and counsel "advised me to tell them basically whatever they wanted to hear [about the burglaries at issue in this case]. . . and if I didn't they would just walk out and wouldn't listen to anything").

prejudiced by the absence of a voluntariness instruction as the jury convicted him of each of the burglaries to which he confessed to the detectives, but he was acquitted of several of the other burglaries to which he did not confess.

When reviewing questions related to jury instructions, "[o]ur key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Commonwealth v. Soto*, 202 A.3d 80, 98 (Pa. Super. 2018) (citation omitted). Our Supreme Court has held that a trial court should not instruct the jury on legal principles that bear no relationship to the evidence presented at trial. *Commonwealth v. Taylor*, 876 A.2d 916, 925 (Pa. 2005). "Accordingly, a criminal defendant must establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Id.* at 925-26.

A defendant who loses a suppression motion seeking to exclude a police statement as involuntary is nevertheless permitted a "second opportunity to test the voluntariness of his statement" by introducing evidence on this issue at trial. *Commonwealth v. Cunningham*, 370 A.2d 1172, 1179 (Pa. 1977); *see also* Pa.R.Crim.P. 581, Comment; *Commonwealth v. Baker*, 24 A.3d 1006, 1024-25 (Pa. Super. 2011), *affirmed on other grounds*, 78 A.3d 1044 (Pa. 2013). When the question is properly presented to the jury, "it may not assess the evidentiary weight to be given to the evidence until it first makes an independent finding that the confession was voluntarily made."

*Cunningham*, 370 A.2d at 1179; *see also Commonwealth v. Cameron*, 780 A.2d 688, 693 (Pa. Super. 2001).

In determining the voluntariness of a confession, the question is "not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Yandamuri*, 159 A.3d 503, 525 (Pa. 2017) (citations omitted). However, "the law does not require the coddling of those accused of crime" and an accused "need not be protected against his own innate desire to unburden himself." *Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002) (citation omitted).

> When examining the voluntariness of a statement pursuant to the totality of the circumstances, a court should consider: the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion. Additional relevant factors include: the accused's age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep or medical attention, and whether he was abused or threatened with abuse.

*Yandamuri*, 159 A.3d at 525 (citations omitted).

The courts of this Commonwealth have held that a voluntariness instruction is required where the defendant presents evidence that his statement to police was not voluntary and he requests such an instruction.

- 8 -

*See, e.g.*, *Commonwealth v. Coach*, 370 A.2d 358, 360-62 (Pa. 1977) (vacating conviction where trial court refused defendant's request to instruct jury that unnecessary delay between arrest and arraignment may impact the voluntariness of confession given during intervening period where evidence showed a substantial delay between arrest and arraignment); *Baker*, 24 A.3d at 1025 (noting that the defendant "was entitled to jury instructions on" voluntariness of confession in light of the fact that he tested the issue at trial and holding that the trial court adequately presented the relevant law in its instructions). However, as our Supreme Court has noted, these cases "do not stand for a broad mandate that a jury instruction concerning the voluntariness of a defendant's statement must be given in every case where such evidence is presented." *Commonwealth v. Gibson*, 951 A.2d 1110, 1142 (Pa. 2008).

Prior to trial, Appellant filed a suppression motion in which he sought to suppress his inculpatory statements to detectives on the grounds that they were obtained in violation of his right to remain silent and that their use at trial violated the prohibition on the introduction of statements against a criminal defendant that were made during unsuccessful plea discussions. *See* Pa.R.E. 410(a)(4). The trial court denied the motion after viewing a video recording of the meeting and hearing oral argument; the court concluded that the statements were not made during plea negotiations and that police did not make promises of preferential treatment that rendered his waiver of his right to remain silent involuntary. *See* Trial Court Opinion, 3/15/16, at 2-3.

In its opinion, the trial court explained the circumstances of Appellant's statement to police as follows:

> [Appellant] had written to the detective to offer information about other unrelated matters and was brought into the district attorney's office to be interviewed in that regard. After [Appellant] has a lengthy[] discussion with his attorney, the detectives and the District Attorney enter the room and the District Attorney tells [Appellant] that in addition to taking the information he has to offer, the detectives will ask him about pending criminal charges because they need to establish his credibility. He is told that he must provide 100% cooperation but that the [District Attorney] is "not making [him] any promises in exchange" for the information provided, and that there is "no agreement as to how the pending cases are to be handled other than that I will take into account your level of cooperation". The District Attorney promises [Appellant] that "you will be better off for having cooperated with me than not, but other than that, I can't promise you anything". The only mention of a plea agreement is that there is none.

*Id.* at 2.

Appellant appealed the denial of his suppression motion. This Court affirmed, noting first that the trial court "properly found that there was no plea discussion [at the April 8, 2015 meeting] and therefore no basis to exclude Appellant's voluntary, inculpatory statements," particularly in light of "the district attorney's personal appearance and express disclaimer of any interest in a plea bargain." *See Bean*, 2018 WL 4270175, at *3. We further held that Appellant's waiver of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966), was knowing, intelligent, and voluntary where he conferred with counsel, signed a *Miranda* waiver, and then chose to speak with the detectives. *See Bean*, 2018 WL 4270175, at *3.

- 10 -

In concluding that no hearing was necessary on Appellant's claim regarding the voluntariness instruction, the PCRA court reasoned as follows:

> Here, no evidence was presented to show that [Appellant's] statements were made involuntarily. There was no evidence that law enforcement officers used improper methods or that [Appellant] was in a physically or mentally weakened condition. To the contrary, while accompanied by his counsel, [Appellant] approached law enforcement and [Appellant] chose to provide statements in an effort to obtain favorable treatment from the District Attorney. [Appellant] may have made an unwise choice to make the statements when the District Attorney was unwilling to extend a plea offer to him, but there is nothing in the record to show that his statements were involuntary. [Appellant's] trial testimony regarding the advice of his attorney was an effort to show that his pretrial statements were false and to offer an explanation to negate those statements. His testimony, however, did not indicate that his statements were involuntary.

Rule 907 Notice, 5/26/20, at 10-11.

The record here supports the PCRA court's conclusion that there was no genuine issue of material fact regarding the question of whether Appellant had raised the issue of voluntariness of his confession. Appellant points to nothing in the trial record showing that the detectives used harsh interrogation techniques, the interview stretched over such a lengthy period of time that it was coercive, or that he was in a physically or mentally weakened state at the time of the interview. *See Yandamuri*, 159 A.3d at 525 (setting forth factors related to determination of voluntariness). Rather, as Appellant explained in his trial testimony, he reached out to the district attorney to offer information on unrelated cases in hope for lenience or favorable treatment, he was told that he would have to provide information on pending charges against him,

and then he affirmatively decided to do so after conferring with his attorney and waiving his **Miranda** rights. **See, e.g.**, N.T., 6/1/17, at 155 ("[A]fter thinking about it for a little bit I had wrote the District Attorney's Office and said hey, I would be willing to come sit down and speak with you guys about, you know, what you would like to talk to me about."); **id.** at 208 ("[I] decided, yeah, I'm going to try and provide some information or some help and get this all resolved and get this taken care of.").

While Appellant argues that his statement was involuntary because he was simply following the advice of his counsel, he cites to no legal authority holding that an individual's receipt of advice from counsel to cooperate with law enforcement is a factor weighing in favor of a finding that a confession was involuntary. **Cf. Cunningham**, 370 A.2d at 1177-79 (noting that a criminal defendant's consultation with counsel was "an attenuating occurrence" and reliance on counsel's advice to reaffirm confession after a lengthy, uncounseled police interrogation reinforced the voluntariness of the statement). Moreover, although the district attorney placed conditions on Appellant's cooperation, there is simply no evidence that he applied any pressure on Appellant to coerce him into divulging incriminating information. Therefore, because evidence of the voluntariness of Appellant's confession was not brought forth at trial, trial counsel was not ineffective for failing to request a voluntariness jury instruction. Appellant's first issue accordingly merits no relief.

Appellant next argues that trial counsel was ineffective for failing to seek the suppression of his historical CSLI,[6] which the Commonwealth's GIS analyst used at trial to show the location of Appellant's cell phone at the approximate time of various of the burglaries for which he was charged. **See** N.T., 6/1/17, at 68-88. It was established at the PCRA hearings that the GIS analyst based his analysis on cell phone records obtained by the Pennsylvania State Police from Appellant's cell phone service provider; the provider disclosed these records after receiving a March 21, 2014 court order issued pursuant to Section 5743 of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. § 5743. **See** N.T., 9/25/20, at 15-18; N.T., 3/4/21, at 6-8, 17.

In **Carpenter v. United States**, 138 S.Ct. 2206 (2018), the United States Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," and the government must generally obtain a warrant supported by probable cause before obtaining CSLI from a third-party service provider. 138 S.Ct. at 2217-18, 2220-23. However, as Appellant recognizes, **Carpenter** was not decided until after Appellant's trial and it is well-established that an attorney's performance "must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for

_____

[6] CSLI is composed of time-stamped records that are generated when an individual's cell phone connects to the closest directional radio antenna, or "cell site." **See Carpenter v. United States**, 138 S.Ct. 2206, 2211 (2018).

failing to predict future developments or changes in the law." ***Commonwealth v. Colon***, 230 A.3d 368, 377 (Pa. Super. 2020) (citation omitted). However, Appellant contends that trial counsel "failed to recognize the importance of" ***United States v. Jones***, 565 U.S. 400 (2012), one of the cases upon which ***Carpenter*** relies, and filed a motion to suppress Appellant's CSLI on the basis of ***Jones***. Appellant's Brief at 26.

The PCRA court concluded that trial counsel was not ineffective for failing to predict the Supreme Court's holding in ***Carpenter*** based upon ***Jones*** as the two cases involve distinct types of searches and the text of the ***Jones*** majority does not directly foreshadow the Court's later decision. PCRA Court Opinion, 7/16/21, at 2-3. We agree with the lower court's assessment. The search at issue in ***Jones*** involved the placement of a global positioning system ("GPS") tracking device on a vehicle and the tracking of that vehicle over the course of 28 days, leading to evidence used in a drug trafficking prosecution. 565 U.S. at 402-03. The Supreme Court held that the act of placing the GPS device on the defendant's vehicle was a "common-law trespass" and thus a search under the Fourth Amendment that necessitated a warrant. ***Id.*** at 404-11.

While ***Carpenter*** and ***Jones*** both involve the surreptitious tracking of an individual's movements using advanced technology, that is where the similarity of these cases ends. The search of CSLI records at issue in ***Carpenter*** did not involve a common-law trespass on the defendant's property, and therefore the ***Carpenter*** holding was based upon a separate

strand of Fourth Amendment jurisprudence relating to an individual's reasonable expectation of privacy over his physical movements, rather than any property right. 138 S.Ct. at 2213-15 & n.1. Furthermore, **Carpenter** involved data that police obtained from a third-party service provider and the Court was thus required to distinguish CSLI from other types of material that has been determined to have lost its Fourth Amendment protection when turned over to third parties. **Id.** at 2216-20.

Therefore, because **Carpenter** involved a different type of search as well as distinct legal issues from **Jones**, trial counsel could not have known at the time for filing a motion to suppress that the **Jones** holding would later be extended to include CSLI records. We may not conduct a "hindsight evaluation" of trial counsel's performance in this case, and therefore "counsel cannot be deemed ineffective for failing to predict" the evolution of Fourth Amendment law as it related to the instant case. **Commonwealth v. Cousar**, 154 A.3d 287, 303 (Pa. 2017). Appellant's second issue thus merits no relief.

In his final issue, Appellant argues that the use of CSLI in this case constituted a "violation of . . . the Constitution . . . of the United States which, in the circumstances of [this] case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). Appellant contends that Section 5743 of the Wiretap Act, the basis for the order that police used to obtain his CSLI, does not mandate a finding of probable cause and is similar to the federal Stored Communications Act provision that was found defective in **Carpenter**.

- 15 -

*Carpenter*, 138 S.Ct. at 2221; *compare* 18 Pa.C.S. § 5743(d) *with* 18 U.S.C. § 2703(d).[7]

In this argument, Appellant again runs into the problem that *Carpenter* was not in effect at the time of his conviction. "When a decision of the Supreme Court of the United States results in a new rule, that rule applies to all criminal cases still pending on direct review."[8] *Commonwealth v. Olson*, 218 A.3d 863, 868 (Pa. 2019) (citation and quotation marks omitted). As set forth in *Teague v. Lane*, 489 U.S. 288 (1989), there are "two categories of rules" that are exempt from the "general retroactivity bar" and "which a defendant may invoke notwithstanding the finality of his or her judgment of sentence." *Olson*, 218 A.3d at 868 (citation omitted). First, new substantive rules, which "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose," generally apply retroactively. *Id.* at 868-69 (citation omitted).

---

[7] Appellant acknowledges our Supreme Court's decision in *Commonwealth v. Pacheco*, 263 A.3d 626 (Pa. 2021), which held that the search of CSLI pursuant to an order under Section 5773 of the Wiretap Act, 18 Pa.C.S. § 5773, does not violate *Carpenter*, but he argues that, unlike Section 5743, Section 5773 demands a level of individualized suspicion similar to that required for a search warrant.

[8] While Appellant's direct appeal was pending in this Court at the time the *Carpenter* decision was handed down, Appellant did not raise any arguments pertaining to the search of his CSLI in the trial court and therefore we could not have reached the issue on appeal. *See Commonwealth v. Moore*, 263 A.3d 1193, 1199 (Pa. Super. 2021) ("Where a new principle of law is adopted while a case is pending on direct appeal, an appellant may be entitled to the retroactive application of the new rule so long as the issue was properly preserved for the reviewing court.").

Second, "a much narrower class of 'watershed rules of criminal procedure,'" which "implicat[e] the fundamental fairness and accuracy of the criminal proceeding," also apply retroactively. *Id.* at 868 (citation omitted).[9]

Here, we have no doubt that ***Carpenter*** announced a "new rule" as it extended Fourth Amendment protection to a new category of personal information and the decision was not dictated by existing precedent. *Id.* at 868 n.3 ("A new ruling is defined as one that breaks new ground or imposes a new obligation on the States or Federal Government, or, stated otherwise, where the result was not dictated by precedent existing at the time the defendant's conviction became final.") (citations, quotation marks, and emphasis omitted). Furthermore, it is clear that ***Carpenter*** did not announce a new substantive rule as it did not establish a "categorical constitutional guarantee[]" that barred the consideration of CSLI in criminal proceedings but merely provided that law enforcement is required to obtain a warrant supported by probable cause in order to use such records at trial. *Id.* at 869 (citation omitted) (holding that ***Birchfield v. North Dakota***, 579 U.S. 438 (2016), was not a new substantive rule as it did not establish a categorical bar to the use of blood alcohol tests but simply mandated that a warrant, or

_____

[9] In ***Edwards v. Vannoy***, 141 S.Ct. 1547 (2021), the United States Supreme Court stated that ***Teague***'s watershed exception was "non-existent in practice" and announced that "[n]ew procedural rules do not apply retroactively on federal collateral review." *Id.* at 1560. As our Supreme Court has not yet opined on whether the watershed rule is "moribund" for the purpose of PCRA review, *id.*, we will continue to follow the ***Teague*** framework.

an exception to the warrant requirement, was required by the Fourth Amendment).

Finally, there is no question that ***Carpenter*** did not announce a watershed procedural rule. As the Supreme Court explained in ***Teague***, a watershed rule is one that "alter[s] our understanding of the **bedrock procedural elements** that must be found to vitiate the fairness of a particular conviction." 489 U.S. at 311 (emphasis in original; citation omitted). Indeed, to date only one right has been recognized as watershed—the right to counsel for indigent defendants announced in ***Gideon v. Wainwright***, 372 U.S. 335 (1963). ***See Commonwealth v. Washington***, 142 A.3d 810, 813 (Pa. 2016); ***see also Edwards v. Vannoy***, 141 S.Ct. 1547, 1557-59 (2021) (listing various "landmark and historic criminal procedure decisions," including ***Miranda***, that have not been deemed to apply retroactively under the watershed exception). While the right to privacy of CSLI guaranteed in ***Carpenter*** is certainly an important right, it does not rise to the level of a "watershed" procedural right.

Accordingly, we conclude that ***Carpenter*** does not apply retroactively on collateral review. Therefore, Appellant cannot benefit from that Supreme Court decision in the present PCRA matter.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/17/2022</u>