**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENDALL FOSTER | : | |
| | : | |
| Appellant | : | No. 400 WDA 2023 |

Appeal from the PCRA Order Entered December 10, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001224-2013

BEFORE:    PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: August 30, 2024**

Kendall Foster ("Foster") appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Foster's counsel, Tina M. Fryling, Esquire ("Attorney Fryling"), has filed a petition to withdraw from representation and a brief styled pursuant to ***Anders v. California***, 386 U.S. 738 (1967).[2]  We deny Attorney Fryling's

_____

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[2] Counsel petitioning to withdraw from PCRA representation must proceed not under ***Anders*** but under ***Commonwealth v. Turner***, 550 A.2d 213 (Pa. Super. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (collectively, "***Turner/Finley***").  Although ***Anders*** and ***Turner/Finley*** are close cousins, bearing similarities in that counsel is required to examine the record, present issues, and request permission to withdraw, there are also significant differences, as explained ***infra***.  ***See Commonwealth v. Wrecks***, 931 A.2d 717, 721-22 (Pa. Super. 2007).

petition to withdraw, vacate the dismissal order, and remand for further proceedings.

This Court previously provided a detailed summary of the factual and procedural history of this matter in Foster's prior appeals. *See Commonwealth v. Foster*, 175 A.3d 368 (unpublished memorandum at **1-4) (Pa. Super. 2017), *appeal denied*, 189 A.3d 987 (Pa. 2018); *see also Commonwealth v. Foster*, 122 A.3d 1126 (unpublished memorandum at **2-4) (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015). The charges against Foster proceeded to a jury trial in September 2013, where he was represented by Stephen Lagner, III, Esquire ("Trial Counsel").

Pertinent to this appeal, Foster did not testify or present any evidence at trial. The trial court conducted an oral colloquy regarding Foster's decision to not testify. Foster stated, in response to the trial court's questioning, that he discussed this issue with Trial Counsel. The trial court informed Foster that while Trial Counsel could advise him, it was Foster's "independent decision" whether to testify. N.T., 9/24/13, at 138. The trial court then asked whether anyone pressured or forced him not to testify, and Foster responded in the negative. *See id*. at 139. Foster also confirmed it was his decision not to testify. *See id*. at 138.

The trial court then inquired of the attorneys whether there was any potential *crimen falsi* evidence. Trial Counsel responded: "I [did not] explore that issue. We just basically decided that [Foster was not] going to testify. I

didn't even pull up his prior record." *Id*. at 139. The Commonwealth stated that Foster had "a" prior robbery, but it did not know "[h]ow old" that conviction was. *Id*. Foster stated his robbery conviction was from 1998, to which the Commonwealth agreed. *Id*. at 139-40. The trial court thus advised Foster:

> The . . . reason I'm asking [is], in the event that you would decide to testify, one of the things that the Commonwealth [could] do is to impeach you by any crimes or conditions you had . . . involving dishonesty. Robbery would be a crime of dishonesty. Depending [on] how old it is, it may or may not be used.
>
> In the event it would be allowed to be used, it could be used for one purpose only. The jury would be told that they can use it as tool to decide whether to accept any testimony you are giving at trial. They would be specifically told that they can't use it to say you're guilty of this crime or these crimes because you committed . . . prior crimes. Do you understand what I'm saying?

*Id*. at 139-40. Foster responded that he understood. *See id*. at 140. We note that

At the conclusion of trial, the jury found Foster guilty of, *inter alia*, attempted homicide, aggravated assault, possessing an instrument of crime, burglary, and three counts of recklessly endangering another person. Subsequently, at sentencing, the trial court noted Foster had three prior convictions for robbery. *See* N.T. Sentencing, 11/26/13, at 7.

On April 20, 2016, following remand by this Court, the trial court imposed a revised aggregate sentence of thirty-seven to seventy-four years'

imprisonment.[3]  This Court affirmed Foster's judgment of sentence, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on July 24, 2018.  **See Foster**, 175 A.3d 368 (unpublished memorandum), *appeal denied*, 189 A.3d 987.

On April 22, 2019, Foster filed the underlying, timely *pro se* PCRA petition.[4]  The PCRA court appointed Mario Medina, Esquire ("PCRA Counsel"), who ultimately filed a two-page supplemental PCRA petition,[5] stating he incorporated all the factual averments and legal claims presented in Foster's *pro se* petition.  The supplemental petition then alleged Trial Counsel was ineffective for, in sum: (1) advising Foster not to testify at trial; (2) not investigating "certain concerns which could have changed the outcome of the trial;" and (3) failing "to cross-examine witnesses in such a manner that would

---

[3] Initially, Foster filed a direct appeal, in which this Court affirmed the judgment of sentence, in part, but vacated Foster's convictions for robbery and conspiracy to commit robbery, and remanded for resentencing.  **See Foster**, 122 A.3d 1126 (unpublished memorandum).

[4] After the Pennsylvania Supreme Court denied Foster's petition for allowance of appeal, he had ninety days, or until October 22, 2018, to file a writ of *certiorari* with the United States Supreme Court.  **See** U.S.Sup.Ct.R. 13. When he did not file such a writ, his judgment of sentence became final for PCRA purposes on that day.  **See** 42 Pa.C.S.A. § 9545(b)(3).  Foster then generally had one year, or until October 22, 2019, to file a PCRA petition.  **See** 42 Pa.C.S.A. § 9545(b)(1).

[5] Initially, PCRA Counsel filed a **Turner**/**Finley** "no merit" letter, suggesting the *pro se* PCRA petition was untimely filed.  However, PCRA Counsel then filed a motion for extension of time to file a supplemental PCRA petition, acknowledging the *pro se* petition was timely.  The PCRA court granted the extension.

have changed the outcome of the trial." Supplemental PCRA Petition, 9/9/19, at 2 (unnumbered).

The PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss the PCRA petition without a hearing. On December 10, 2019, it issued the underlying order dismissing the petition. Thereafter, the PCRA court received two *pro se* letters from Foster, which, respectively: (1) requested the court to forward an enclosed letter to PCRA Counsel, which in turn asked PCRA Counsel to file an appeal; and (2) requested an updated docket sheet. The PCRA court forwarded both *pro se* letters to PCRA Counsel and sent the requested docket sheet to Foster. However, PCRA Counsel did not file anything further in this matter, including any petition to withdraw from representation.

On March 25, 2020, Foster filed another *pro se* PCRA petition, alleging: (1) he did not know, until he recently received the docket sheet, that PCRA Counsel did not file an appeal on his behalf; and (2) PCRA Counsel was ineffective for not contacting him or filing an appeal. In June 2020, the PCRA court reinstated Foster's appeal rights *nunc pro tunc*,[6] appointed new counsel,

---

[6] Foster's March 25, 2020 petition was also subject to the timeliness requirements of the PCRA. **See Commonwealth v. Smith**, 181 A.3d 1168, 1173 n.2 (Pa. Super. 2018) (stating that "all requests for reinstatement of appellate rights, including PCRA appellate rights, must meet the timeliness requirements or an exception thereto under the PCRA"). As stated above, the general one-year deadline for Foster to file a PCRA appeal fell on October 22, 2019. However, as Foster pleaded that PCRA Counsel failed to contact him and failed to file an appeal as requested, he could properly invoke the newly-discovered fact exception at 42 Pa.C.S.A. § 9545(b)(1)(ii). **See**
*(Footnote Continued Next Page)*

James P. Miller, Esquire ("Attorney Miller"), to represent Foster, and directed him to file a notice of appeal within thirty days. Attorney Miller, however, similarly took no action in this case. Thus, in March 2023, the PCRA court issued an order: (1) finding Attorney Miller abandoned Foster; (2) again reinstating Foster's appeal rights *nunc pro tunc*; and (3) appointing present counsel, Attorney Fryling.

Attorney Fryling filed a notice of appeal *nunc pro tunc*, and in response to the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, filed a "Statement of Intent to File an *Anders*/*McClendon* Brief."[7] In this Court, Attorney Fryling filed a petition to withdraw from representation and accompanying brief styled pursuant to *Anders*. Foster has filed a *pro se* brief, presenting new claims that PCRA Counsel was ineffective for not raising additional claims of Trial Counsel's ineffectiveness.

At the outset of our review, we note that this case does not implicate *Anders*. As explained above, *Anders* applies to direct appeals, whereas

_____

*Commonwealth v. Bennett*, 930 A.2d 1264, 1272-73 (Pa. 2007) (stating that while a claim of counsel's ineffectiveness generally does not invoke the newly-discovered fact exception, a claim that counsel failed to file a requested appeal may satisfy the exception, as such a failure "is the functional equivalent of having no counsel at all" and "requires a finding of prejudice"). The PCRA court agreed that PCRA Counsel abandoned Foster and did not file the requested appeal, and thus found Foster was entitled to relief. We do not disturb the PCRA court's ruling. *See id*.

[7] *See Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981).

- 6 -

*Turner*/*Finley* applies to PCRA cases. This Court has explained the differences between the requirements imposed by *Anders* and *Turner*/*Finley* as follows:

> *Anders* counsel is not permitted to withdraw unless the appeal is wholly frivolous, but *Turner*/*Finley* counsel is permitted to do so if the case lacks merit, even if it is not so anemic as to be deemed wholly frivolous. Also, *Anders* counsel must not argue against the client's interests while *Turner*/*Finley* counsel must do so, articulating why the client's claims have no merit.
>
> The heightened protection afforded to *Anders* appellants as compared to *Turner*/*Finley* petitioners/appellants arises because the right to counsel on direct appeal and the right to the direct appeal itself are constitutional ones. By comparison, a first-time PCRA petitioner's right to counsel is born of rule, namely Pa.R.Crim.P. 904(C), and that right does not spring from the federal or state constitutions.

*Wrecks*, 931 A.2d at 722 (citations omitted). "Because an *Anders* brief provides greater protection to a defendant, this Court may accept an *Anders* brief in lieu of a *Turner*/*Finley* letter." *Commonwealth v. Widgins*, 29 A.3d 816, 817 n.2 (Pa. Super. 2011).

This Court has set forth the *Turner*/*Finley* requirements for an attorney seeking to withdraw from representation:

> Counsel must review the case zealously. [C]ounsel must then submit a "no-merit" . . . brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which [the] petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising [the] petitioner of the right to proceed *pro se* or by new counsel.

> Where counsel submits a petition and no-merit letter that . . . satisfy the technical demands of ***Turner***/***Finley***, . . . this Court [] must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Commonwealth v. Walters***, 135 A.3d 589, 591 (Pa. Super. 2016) (citation omitted). "By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief." ***Wrecks***, 931 A.2d at 721. Substantial compliance with the requirements to withdraw will satisfy the ***Turner***/***Finley*** criteria. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa. Super. 2003).

Preliminarily, our review discloses that Attorney Fryling has substantially complied with the above technical requirements. In the ***Anders*** brief, Attorney Fryling summarized the trial evidence and procedural history, listed the issues that Foster wished to have reviewed, and set forth her reasoning why each of issue lacks merit. ***See Anders*** Brief at 5-15. Attorney Fryling has provided this Court with a copy of a letter, dated September 20, 2023, that she sent to Foster, which: (1) stated her belief that the appeal would have no merit and be frivolous; (2) advised Foster of his rights to retain new counsel or proceed *pro se*; and (3) indicated that she was enclosing copies of the petition to withdraw and ***Anders*** brief. ***See*** Letter, 9/20/23, at unnumbered 1-2. As we conclude Attorney Fryling has substantially complied with the technical requirements necessary to withdraw, we now independently

review the merits of the claims raised in the **Anders** brief. **See Walters**, 135 A.3d at 591; **see also Karanicolas**, 836 A.2d at 947.

In the **Anders** brief, Attorney Fryling presents the following issues for our review:

1. Trial [C]ounsel erred in advising [Foster] not to present testimony on his own behalf.

2. Trial Counsel was ineffective for failing to request a **Kloiber**[8] instruction when no one identified him at the scene of the crime.

3. Trial [C]ounsel was ineffective in failing to effectively cross examine witness Robert Gore[.]

4. Trial [C]ounsel was ineffective in failing to obtain hospital records which would have demonstrated the chronology of the night's events.

5. Trial [C]ounsel was ineffective for failing to investigate further the whereabouts of or interview Avery Kirkey, whose DNA was found at the scene of the crime

6. Trial [C]ounsel was ineffective in failing to object to Shawanda Zigler's testimony during trial.

**Anders** Brief at 1-2 (issues reordered, footnote added).

"This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Colon**, 230 A.3d 368, 374 (Pa. Super. 2020) (citation omitted).

---

[8] **See Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

With respect to a claim of counsel's ineffective assistance, "counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Smith*, 181 A.3d 1168, 1174 (Pa. Super. 2018) (citation omitted).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that[:]
>
>> [A] claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>>
>> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>>
>> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A

> reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Colon*, 230 A.3d at 374 (citation omitted). "The failure to satisfy any one of the prongs will cause the entire claim to fail." *Smith*, 181 A.3d at 1175 (citation omitted).

The first issue in the *Anders* brief alleges Trial Counsel's ineffective assistance for improperly advising Foster not to testify at trial. "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Washington*, 269 A.3d 1255, 1263 (Pa. Super. 2022) (*en banc*) (citation omitted).

> A trial court is not required to conduct a colloquy to determine whether a defendant has made a knowing, intelligent and voluntary waiver of his right to testify. Nevertheless, a criminal defendant must understand his decision not to testify if not by colloquy, then by the presumed competent advice of counsel.

*Id*. at 1264 (citations omitted).

> This Court has explained:

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the [defendant] of his rights in this regard, the [defendant] must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Id*. at 1262 (citation omitted). In reviewing for prejudice, the court determines whether the defendant's decision not to testify "would have been

different absent counsel's ineffectiveness, **not** whether the outcome of the trial itself would have been more favorable had the defendant taken the stand." **Id**. (emphasis added, citation omitted).

With respect to the presentation of *crimen falsi* evidence, "[a] witness may be impeached by showing a prior conviction if the crime involved dishonesty or false statement." **Commonwealth v. La Massa**, 532 A.2d 450, 452 (Pa. Super. 1987); **see also** Pa.R.E. 609(a) (providing that "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement"). However:

> [I]f more than 10 years have passed since the witness'[] conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible only if:
>
> > (1) its probative value substantially outweighs its prejudicial effect; and
>
> > (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(b)(1)-(2). Robbery is a *crimen falsi* offense. **See Commonwealth v. Harris**, 884 A.2d 920, 925 (Pa. Super. 2005).

In the **Anders** brief, Attorney Fryling sets forth Foster's arguments, in sum, as follows:

> . . . Foster argues that [T]rial [C]ounsel did not advise him that the Commonwealth could not directly impeach him with evidence of prior crimes/*crimen falsi*, in accordance with 42 Pa.C.S.[A. §] 5918. . . . Foster argues that he would have presented evidence and testimony regarding his whereabouts that night and that he

would have testified that he tried to rob his drug dealer on the night in question and was shot by that individual, and that he [did not] go to the hospital in Erie since he was on parole and would have had a dirty urine [*sic*].

*Anders* Brief at 14.[9]  Attorney Fryling then states why she believes this issue is meritless, in sum, as follows:

. . . Foster does not argue that he requested of [Trial Counsel] that he be able to testify, and [T]rial [C]ounsel's trial strategy very likely assumed that based on . . . Foster's background and the facts of this case, it would be more advantageous for him not to testify.

*Id*.  Attorney Fryling does not cite any law concerning a criminal attorney's advice to his client on testifying at trial, nor the admission of *crimen falsi* evidence against a defendant who testifies at his own trial.

In its Rule 907 notice addressing Foster's claim of Trial Counsel's ineffectiveness, the PCRA court acknowledged the record did not include any discussions between Foster and Trial Counsel as to his decision not to testify.

_____

[9] Foster's *pro se* brief raises a related claim:

Was [PCRA Counsel] ineffective under [***Bradley***, 261 A.3d 381 (Pa. 2021),] for failing to [a] raise claim that [T]rial [C]ounsel was ineffective for failing properly advise . . . Foster about his constitutional right to testify and that the Commonwealth could not directly impeach Foster with any evidence of prior crimes/*crimen falsi* conviction?

Foster's *Pro Se* Brief at 5; ***see also Bradley***, 261 A.3d at 401 (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").  In light of our disposition of Attorney Fryling's ***Anders*** petition, we do not reach the merits of this claim.

Nevertheless, the PCRA court reasoned it could resolve Foster's claim as follows:

> Assuming *arguendo* that [T]rial [C]ounsel advised [Foster] not to testify, there was a sound tactical reason for such advice, to-wit, [Foster's] prior record of *crimen falsi* offenses could have been admitted to impeach his testimony. Pa.R.E. 609. Thus[,] the jury could have been aware of his three prior robbery convictions and various theft convictions. It was certainly not in [Foster's] best interest for the jury to hear about his *crimen falsi* convictions.
>
> [Foster] also fails to establish how he was prejudiced or how the outcome of the trial would have been different had he testified.

Rule 907 Notice, 10/30/19, at 5 (some italicization added, some italicization omitted).

Our review reveals the record does not support the PCRA court's findings. As stated above, the trial court conducted an oral colloquy regarding Foster's decision to not testify, during which it inquired whether there were any potential *crimen falsi* evidence. The trial court properly informed Foster that, depending on the age the conviction, the Commonwealth may or may not be able to present it to the jury. **See** N.T., 9/24/13, at 139; **see also** Pa.R.E. 609(b). However, Trial Counsel plainly disclosed: "I [did not] explore that issue. We just basically decided that [Foster was not] going to testify. I didn't even pull up his prior record." N.T., 9/24/13, at 139. The Commonwealth stated Foster had "a" prior robbery, but could not say when he was convicted, although Foster volunteered that it was in 1998. **See id.**

- 14 -

At the first sentencing hearing, however, the trial court clarified Foster had three prior robbery convictions. With respect to the first conviction, Foster received a sentence in 1994 of two to fifteen years' imprisonment. For the second conviction, Foster received a sentence in 1998 to five to fifteen years' imprisonment. No conviction date or sentencing information was provided for the third conviction. *See* N.T. Sentencing, 11/26/13, at 7.

Considering all the above statements made at trial and sentencing, together with the ***Anders*** brief and the PCRA Court's Rule 907 notice, we determine the following. First, it ***appears*** that Foster's prior robbery convictions may have been admissible as *crimen falsi*, where the completion, if any, of his sentences could have fallen within ten years of his 2013 trial. ***See*** Pa.R.E. 609(b). However, we emphasize there was no conclusion as to whether any *crimen falsi* could have been presented against Foster. At trial, the Commonwealth stated Foster had "a" robbery conviction, but could not initially say when it was incurred. N.T., 9/24/13, at 139. Trial Counsel stated he did not "explore" the issue of *crimen falsi* and "[did not] even pull up his prior record." ***Id***. at 139. In the absence of any particular determination by the trial court, we decline to reach a factual finding as to a critical factor in Foster's claim — whether he would have been impeached with *crimen falsi* evidence had he testified.

Second, we conclude Attorney Fryling's reasoning, as to why Foster's claim of Trial Counsel's ineffectiveness would fail, is not supported by the

record. Attorney Fryling states that Trial Counsel "very likely" had a trial strategy that, "based on . . . Foster's background and the facts of this case, it would [have been] more advantageous for him not to testify." ***Anders*** Brief at 13. This reasoning, however, ignores Trial Counsel's clear statement at trial that he did not review Foster's prior criminal record and did not "explore" the issue of possible *crimen falsi*. N.T., 9/24/13, at 139. Instead, Trial Counsel stated without further explanation, "We just basically decided that he [was not] going to testify." ***Id***.

Third, we determine both Attorney Fryling and the PCRA court improperly considered the weight that would have been given Foster's testimony, or the potential outcome of the trial, had Foster testified. Trial Counsel reasoned that Trial Counsel may have believed "it would be more advantageous for [Foster] not to testify," and the PCRA court found "[i]t was certainly not in [Foster's] best interest for the jury to hear about his *crimen falsi* convictions." ***Anders*** Brief at 14; ***see also*** Rule 907 Notice, 10/30/19, at 5. As stated above, to establish prejudice in a claim that counsel was ineffective for misadvising on whether to testify, a petitioner need not show the outcome of his trial would have been more favorable. ***See Washington***, 269 A.3d at 1264. Instead, the relevant inquiry is merely whether the petitioner's decision not to testify would have been different. ***See id***.

In light of the foregoing, we conclude Attorney Fryling's reasoning, for concluding Foster's claim of Trial Counsel is meritless, is not supported by the

law. Furthermore, the record does not support the PCRA court's conclusions. *See Colon*, 230 A.3d at 374. Thus, we cannot agree with Attorney Fryling that this claim lacks merit. *See Wrecks*, 931 A.2d at 721.

Furthermore, we determine that factual questions remain, including what Trial Counsel advised Foster and whether or how his advice affected Foster's decision to not testify at trial. As the PCRA court acknowledged: "The record is devoid of any discussions held between [Foster] and [Trial Counsel] regarding [his] decision not to testify." Rule 907 Notice, 10/30/19, at 5.

Under the particular circumstances presented, we deem the best course of action is to: deny Attorney Fryling's petition to withdraw from representation; vacate the December 10, 2019 order dismissing Foster's PCRA petition; and remand to the PCRA court for Attorney Fryling to properly review Foster's claims. Attorney Fryling may then either: file a written amended PCRA petition raising Foster's ineffectiveness claim respecting his decision whether to testify at trial, as well as any other issues she determines to have merit — and the PCRA court may hold a hearing on the claims;[10] or (2) file a proper *Turner*/*Finley* letter and motion to withdraw explaining why there is no merit to Foster's claims. We further instruct that Attorney Fryling must file either the amended PCRA petition or the *Turner*/*Finley* letter in the PCRA court within thirty days of the date of this memorandum.

---

[10] *See Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (stating the PCRA court hears evidence and passes on the credibility of witnesses).

- 17 -

In light of our disposition, we do not reach the remaining issues raised in the **Anders** brief nor those in Foster's *pro se* brief.

December 10, 2019 order dismissing Foster's PCRA petition vacated. Attorney Fryling's petition to withdraw from representation denied. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

August 30, 2024