J-S66021-19

2020 PA Super 43

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| PEDRO COLON | : | |
| Appellant | : | No. 1006 EDA 2019 |

Appeal from the PCRA Order Entered March 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010694-2009

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| PEDRO COLON | : | |
| Appellant | : | No. 1007 EDA 2019 |

Appeal from the PCRA Order Entered March 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010695-2009

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| PEDRO COLON | : | |
| Appellant | : | No. 1008 EDA 2019 |

Appeal from the PCRA Order Entered March 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010697-2009

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |

J-S66021-19

                                              :
                                              :
                                              :
PEDRO COLON                                   :
                                              :
            Appellant          :    No. 1009 EDA 2019

        Appeal from the PCRA Order Entered March 21, 2019
   In the Court of Common Pleas of Philadelphia County Criminal Division at
              No(s):  CP-51-CR-0010698-2009

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                              :          PENNSYLVANIA
                                              :
            v.                                :
                                              :
                                              :
                                              :
PEDRO COLON                                   :
                                              :
            Appellant          :    No. 1010 EDA 2019

        Appeal from the PCRA Order Entered March 21, 2019
   In the Court of Common Pleas of Philadelphia County Criminal Division at
              No(s):  CP-51-CR-0010700-2009

BEFORE: STABILE, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

OPINION BY NICHOLS, J.:                    **FILED FEBRUARY 21, 2020**

      Appellant Pedro Colon appeals from the orders dismissing his first Post

Conviction Relief Act[1] (PCRA) petition filed at each of the above-captioned

docket numbers.[2]    Appellant raises several claims of trial counsel's

ineffectiveness.  We affirm.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] Because Appellant filed an identical petition at each of the above-captioned
docket numbers, we refer to the petition in the singular.

- 2 -

We state the facts and procedural history as set forth by a prior decision of this Court:

On June 21, 2009, at approximately 1:00 am[], Appellant was at the La Quinta Restaurant and Bar on the corner of North 5th Street and Courtland Street when he got into a physical altercation with Christian Aguilar, who was at the bar with his family. After Appellant punched Christian Aguilar, two of Christian Aguilar's aunts, Jacqueline Santiago and Jacqueline Quintas, got involved in the fight and began to punch Appellant. One of the bar's bouncers intervened in the fight and escorted Appellant from the bar. After the fight broke up and Appellant was ejected from the bar, Appellant told a blonde woman standing nearby to "clear the area," and that he "was coming back."

Approximately 10 to 20 minutes later, a car pulled up in front of the bar and Appellant got out of the passenger seat. Appellant then pulled out a black handgun, and opened fire into the bar. After shooting at least 15 rounds, Appellant walked away from the bar and got back into the car, which pulled away. Police arrived on the scene, where they found Damien Aguilar, Christian Aguilar's uncle, unresponsive on the floor of the bar. Damien Aguilar was taken to Albert Einstein Hospital, where he was pronounced dead from a single gunshot wound to the abdomen. Several other patrons of the bar were shot and were transported to the hospital, including Luis Corcino, Richard Soto, Lizandra Perocier, Carmelo Fernandez, and Naiomi Ruiz.

Juan Aguilar, who knew Appellant from the neighborhood and was Damien Aguilar's nephew, was standing in front of the bar when the shooting took place and identified Appellant to police from a photo array. Ms. Santiago and Ms. Collado each identified Appellant from a photo array as the man who had fought with their nephew and as the man who had returned to the bar and opened fire. Mr. Corcino also identified Appellant from a photo array as the man in the fight and as the shooter.

Police went to Appellant's residence, but he was not at home. Later that day, at approximately 7:00 p.m., Philadelphia Police Officer Timothy Stephan and Officer Ruben Santiago were patrolling the area of 6th Street and Clearfield Street when they saw a vehicle, which was being operated by . . . Appellant, fail to use a turn signal. Officer Stephan attempted to pull over the car,

- 3 -

but Appellant slowed the car to a stop and stuck his head out of the window, then continued to drive the car at a high rate of speed. One block away, he was struck by another vehicle after running a stop sign. He then got out of the car and ran from the police. Officer Stephan began pursuing Appellant on foot. As Appellant ran, he passed two men sitting in front of a car-detailing store. As he passed the men, he yelled something in Spanish, pulled a heavy-looking object from the front of his body that was wrapped in a t-shirt, and threw it at the two men. Officer Stephan continued to chase Appellant, eventually catching up to him and subduing him with a taser. Appellant was arrested. The object that he discarded during the police chase was never recovered.

*Commonwealth v. Colon*, 2014 WL 10965819, *1 (Pa. Super. filed Mar. 28, 2014) (unpublished mem.) (some formatting altered). "Appellant's first jury trial on these charges commenced on July 14, 2011[,] and resulted in a hung jury as to all charges on July 26, 2011." *Id.* at *2 n.2.

At Appellant's second trial in September 2012, a jury convicted Appellant of first-degree murder, criminal conspiracy, attempted murder, aggravated assault, carrying a firearm without a license, and possession of an instrument of crime. The trial court sentenced Appellant to life imprisonment. Appellant filed post-sentence motions, which were denied. Appellant appealed, this Court affirmed, and our Supreme Court denied Appellant's petition for allowance of appeal on September 18, 2014. *Commonwealth v. Colon*, 99 A.3d 923 (Pa. 2014).

On February 4, 2015, the PCRA court docketed Appellant's *pro se* PCRA petition at each of the above-captioned docket numbers. The PCRA court appointed PCRA counsel, who filed an amended PCRA petition at each docket number. The counseled amended PCRA petition claimed that Appellant's trial

and direct appeal counsel were ineffective "because counsel failed to call an expert witness at trial or request a remand while on appeal, to testify to scientific studies pertaining to the fallibility of human memory and recall relating to the reliability of eyewitness testimony." Am. PCRA Pet., 3/10/16, at ¶ 4a. On August 9, 2017, PCRA counsel filed a supplemental amended PCRA petition raising a claim that trial counsel was ineffective for failing to request a *Kloiber*[3] charge.

On December 13, 2017, PCRA counsel filed another supplemental amended PCRA petition asserting that trial counsel was ineffective for not objecting to the testimony of Officer Ruben Santiago. Am. PCRA Pet., 12/13/17, at ¶ 4a. Specifically, Officer Santiago "testified at trial that he overheard a woman describing the details of . . . the alibi testimony to Jose Benesario and heard Benesario ask should I say that in court and then Benesario went into the courtroom." *Id.* PCRA counsel argued as follows:

> This testimony should not have been admitted because Jose Ben[e]sario testified as an alibi witness at the first trial and his testimony was the same as the second trial and his alleged conversation with the woman was not relevant to Benesario's credibility as an alibi witness and should have not been admitted.

*Id.*

On January 31, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice, which stated that Appellant's issues lacked merit. PCRA counsel filed a

---

[3] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

response on February 12, 2019, asserting that the law had changed since Appellant's trial to permit expert witness testimony regarding the reliability of eyewitness testimony.[4] Appellant's Rule 907 Resp., 2/12/19, at 1. The PCRA court dismissed Appellant's petition on March 21, 2019.

PCRA counsel filed a timely notice of appeal at each docket number.[5] Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement reiterating all of the issues raised in his PCRA petition.

Appellant raises the following issues:

1. Did the [PCRA] court err in denying an evidentiary hearing to [A]ppellant when [A]ppellant raised a material issue of fact that trial defense counsel was ineffective in not requesting a ***Kloiber*** charge to the jury?

2. Did the [PCRA] court err in denying an evidentiary hearing to [A]ppellant when [A]ppellant raised a material issue of fact as to trial and appellate defense counsel's ineffectiveness, who were the same attorney, in not securing a forensic psychologist w[h]o could have testified to the unreliability of the Commonwealth eyewitnesses at trial?

3. Did the [PCRA] court err in denying an evidentiary hearing to the [A]ppellant when [A]ppellant raised a material issue of fact that [A]ppellant is entitled to a new trial because of evidence that was unavailable at the time of trial is now available?

---

[4] PCRA counsel's Rule 907 response did not address the other issues raised in the PCRA petition.

[5] We note that Appellant's appeal complies with ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), in which the Pennsylvania Supreme Court announced a prospective rule that "the proper practice under [Pa.R.A.P.] 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket." ***Walker***, 185 A.3d at 977.

4. Did the [PCRA] court err in denying appellant funds for expert witness, a forensic psychologist, who could have testified to the unreliability of Commonwealth eyewitnesses in the case, when the [A]ppellant was indigent?

5. Did the [PCRA] court err in denying [A]ppellant an evidentiary hearing when [A]ppellant raised a material issue of fact that trial defense counsel was ineffective in failing to object to improper Commonwealth rebuttal evidence?

Appellant's Brief at 2.

We begin by stating the standard of review.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

***Commonwealth v. Grayson***, 212 A.3d 1047, 1051 (Pa. Super. 2019)

(citation omitted). We have stated that

to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that

a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent

- 7 -

counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and some formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019). Boilerplate allegations of ineffectiveness do not establish a defendant's burden of establishing relief. ***Commonwealth v. Jones***, 811 A.2d 994, 1003 (Pa. 2002).

Furthermore,

A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing.

***Commonwealth v. Smith***, 121 A.3d 1049, 1052 (Pa. Super. 2015) (citations omitted and some formatting altered).

By way of background for Appellant's first issue challenging the **Kloiber** charge, the trial court held a conference to discuss the jury charge. At that conference, the following exchange occurred:

[Appellant's Trial Counsel]: I think for the record I better request the **Kloiber** charge.

THE COURT: Okay. And I will deny the **Kloiber** charge for the reason -- I can't remember if we were on the record, but under the **Sanders** case, [**Commonwealth v. Sanders**, 42 A.3d 325 (Pa. Super. 2012),] -- was it **Sanders**? I don't have it with me. I believe it's Commonwealth versus **Sanders**, the Superior Court 2012 case, if the witness does not give -- does not make an in-court identification **Kloiber** is not necessary if you give the instruction I'm going to give which lays out all of the factors. And I took careful notes, I did not see any witnesses who made an in-court identification who made an erroneous identification at either a photo spread or at a line-up. Everybody who identified in court was unmistaken at the line-up or the photo array. So for that reason your request for **Kloiber** is denied. Now, if I'm factually incorrect, I'm sure you'll point that out to me.

[Appellant's Trial Counsel]: Did Angela Tate identify in court?

[Assistant District Attorney]: No, she did not.

\* \* \*

THE COURT: . . . As for -- you asked about Tate?

[Appellant's Trial Counsel]: Tate.

THE COURT: Tate, that's what we were just talking about. . . .

THE COURT: Was there anybody else you asked about? I just don't remember, [Appellant's Trial Counsel].

[Appellant's Trial Counsel]: Well, Charlene [Collins] was not able to make an identification and she picked out the wrong person in the photo array and did not attend a line-up.

THE COURT: Right. And there was no in-court I.D?

- 9 -

[Assistant District Attorney]: Correct.

THE COURT: Okay. If you find somebody who made an in-court I.D. who did not make the correct I.D. at the line-up or who picked the wrong person out at the photo spread -- I guess the only issue at all would be Angela Tate.

\*    \*    \*

THE COURT: Angela Tate did not make an in-court identification.

[Assistant District Attorney]: Right. Angela Tate, she also narrowed it down to two pictures at the photo spread and made a mis-I.D. at the line-up and I did not elicit an in-court I.D. from her.

THE COURT: She did not make an in-court I.D.

[Assistant District Attorney]: Right.

N.T. Trial, 9/11/12, at 12-16.

In support of the first issue, Appellant argues that trial counsel was ineffective for failing to request a **Kloiber** charge, specifically with respect to Tate and Collins.[6] Appellant's Brief at 9. He contends that these two eyewitnesses did not identify him as the assailant prior to trial. Appellant asserts that trial counsel failed to object when the trial court did not issue a **Kloiber** charge notwithstanding counsel's request for such a charge. **Id.** He reasons he is entitled to an evidentiary hearing on the issue.

In **Sanders**, which the trial court cited above, this Court noted:

_____

[6] Appellant identified the two witnesses at issue in the supplemental PCRA petition but not in the appellate brief.

- 10 -

> A **Kloiber** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions.

**Sanders**, 42 A.3d at 332 (citation and footnote omitted).

However, "[w]here an eyewitness has had protracted and unobstructed views of the defendant and consistently identified the defendant throughout the investigation and at trial, there is no need for a **Kloiber** instruction." **Commonwealth v. Ali**, 10 A.3d 282, 303 (Pa. 2010) (citations omitted and some formatting altered). Moreover, when a witness does not identify the defendant in court or declines to identify the defendant in court, a **Kloiber** instruction is not required. **Sanders**, 42 A.3d at 335.

Here, Appellant's trial counsel actually requested a **Kloiber** charge. **See** N.T. Trial, 9/11/12, at 12-16. Therefore, Appellant is mistaken, and his trial counsel cannot be found ineffective for not requesting such a charge. **See** Appellant's Brief at 9-10; **Sandusky**, 203 A.3d at 1043-44.

To the extent Appellant contends trial counsel was ineffective for not objecting when the trial court refused to give a **Kloiber** charge for Tate and Collins, **see** Appellant's Brief at 10, neither Tate nor Collins identified Appellant at trial. **See** N.T. Trial, 9/11/12, at 12-16. Therefore, the trial court was not obligated to issue a **Kloiber** charge for those witnesses. **See Sanders**, 42 A.3d at 335. Because Appellant failed to establish the underlying claim is of arguable merit, Appellant cannot establish that trial counsel was ineffective

- 11 -

for not objecting when the trial court did not issue the requested **Kloiber** charge. **See Sandusky**, 203 A.3d at 1043-44.

We add that several other eyewitnesses identified Appellant as the shooter. **See Colon**, 2014 WL 10965819 at *1 (noting that Juan Aguilar, Jacqueline Santiago, and Collado identified Appellant prior to and at trial). Therefore, even if the issue had arguable merit, Appellant would not have been able to establish a reasonable probability that the outcome of the proceedings would have been different. **See Sandusky**, 203 A.3d at 1043-44. Accordingly, Appellant's first issue fails.

We summarize Appellant's next three issues together, as they are interrelated. Appellant argues that trial counsel was ineffective for failing to call an expert witness "who could have testified to scientific studies pertaining to the fallibility of human memory and recall relating to the reliability of eyewitness testimony." Appellant's Brief at 14 (citing, *inter alia*, **Commonwealth v. Walker**, 92 A.3d 766, 793 (Pa. 2014), which was filed on May 28, 2014). Appellant acknowledges that **Walker** was not in effect at the time of his trial, but maintains that because **Walker** was issued while his direct appeal was pending, his counsel was ineffective for not filing a motion to remand. **Id.** at 14-15. Appellant baldly argues that an expert could have provided exculpatory evidence that was unavailable at his trial. **Id.** at 18.

Appellant similarly claims that he petitioned the trial and PCRA court for funds to pay for such an expert. **Id.** at 22. He claims that the Commonwealth

had an affirmative obligation to treat indigent defendants identical to financially well-off defendants and that a financially well-off defendant could have retained the expert at issue. *Id.* at 23. Appellant argues that he was entitled to have funds for such an expert because the Commonwealth's entire case was based on eyewitness testimony. *Id.* at 23-24.[7]

The principles governing our review are as follows. "[C]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law." ***Commonwealth v. Todaro***, 701 A.2d 1343, 1346 (Pa. Super. 1997) (citation omitted). Prior to May 28, 2014, expert testimony on eyewitness identification was *per se* inadmissible. ***See generally Commonwealth v. Abdul-Salaam***, 678 A.2d 342, 352 (Pa. 1996). On May 28, 2014, our Supreme Court issued ***Walker***, holding "that the admission of expert testimony regarding eyewitness identification is no longer *per se* inadmissible in our Commonwealth." ***Walker***, 92 A.3d at 793.

It is well-settled in this Commonwealth, however, that "in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of adjudication up to and including the direct appeal." ***Jones***, 811 A.2d at 1005. In ***Jones***, the defendant argued

_____

[7] The Commonwealth mistakenly asserts that Appellant argued that the "***Walker*** decision constitutes after-discovered evidence." Commonwealth's Brief at 20. Appellant did not raise such an argument.

that because a particular case was decided while his direct appeal was pending, the defendant's counsel was ineffective "for failing to demand relief in light of the new . . . decision." *Id.* at 1004. Our Supreme Court rejected the defendant's argument, reasoning that because counsel failed to preserve the issue "at trial, counsel could not demand retroactive application of the new rule upon appeal." *Id.* at 1005. The *Jones* Court reiterated that "[c]ounsel cannot be held ineffective for failing to predict such a new course in the law." *Id.* (citation omitted).

Finally, we review the PCRA court's denial of funds for an expert for an abuse of discretion:

> The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion. At the trial stage, an accused is entitled to the assistance of experts necessary to prepare a defense. This [C]ourt has never decided that such an appointment is required in a PCRA proceeding. We must review the PCRA court's exercise of its discretion in the context of the request, that an expert's testimony is necessary to establish his entitlement to relief under 42 Pa.C.S. § 9543(a)(2)(vi), the provision of the PCRA which deals with claims of innocence based on after-discovered evidence.

*Commonwealth v. Reid*, 99 A.3d 470, 505 (Pa. 2014) (citation omitted and some formatting altered).

Initially, we view Appellant's trial counsel's stewardship under the law that existed at the time of trial, which was that expert testimony on eyewitness identification was *per se* inadmissible. *See Abdul-Salaam*, 678 A.2d at 352; *Todaro*, 701 A.2d at 1346. Appellant's trial counsel cannot be

- 14 -

held ineffective for failing to predict a change in the law. *See Jones*, 811 A.2d at 1005. Further, in order for Appellant to have *Walker* apply retroactively to his case, Appellant's trial counsel had to have preserved the issue at trial. *See id.* As in *Jones*, Appellant argued that his "case was not final until after the *Walker* case was decided and appellate defense counsel not only could file a motion to remand but was required to in order to be effective." Appellant's Brief at 15; *see Jones*, 811 A.2d at 1005. Moreover, Appellant summarily claimed that such expert testimony on eyewitness identification was exculpatory without identifying which eyewitnesses testimony would have been affected.

To the extent Appellant claims the trial court erred by denying him funds for an expert witness, such a claim is not cognizable under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2). Additionally, Appellant failed to identify where in the record Appellant's trial counsel requested funds.[8] In any event, even if the request was made, such expert testimony was *per se* inadmissible at trial. *See Abdul-Salaam*, 678 A.2d at 352. To the extent Appellant argues the PCRA court erred by denying him funds for an expert, he failed to establish the testimony would have achieved a different outcome or a more favorable verdict at trial. *See Reid*, 99 A.3d at 505. Rather, Appellant baldly argues

---

[8] The docket, however, reflects Appellant's request to the PCRA court for funds to hire a psychologist.

that the expert testimony was exculpatory without discussing any of the witnesses at issue. Based on this record, the PCRA court did not abuse its discretion in denying Appellant's request for funds. ***See id.***

For his final issue, Appellant argues that trial counsel was ineffective for failing to object to Officer Santiago's rebuttal testimony concerning a conversation that he overheard outside the courtroom during Appellant's first trial. At the second trial, Appellant testified in addition to alibi witnesses Benesario and Jaira Aponte, Benesario's wife.[9] In relevant part, Benesario testified that he, his wife, and Appellant were with Appellant on the night of the shooting. N.T. Trial, 9/11/12, at 200-06. Some of the time was spent at Penn Treaty Park, eating at a fast food restaurant, answering a phone call, and smoking marijuana. ***Id.*** at 200.

In rebuttal, the Commonwealth presented the testimony of Officer Santiago, who had testified at Appellant's first trial. N.T. Trial, 9/12/12, at 67. Officer Santiago testified that at Appellant's first trial, he was standing outside the courtroom with the other sequestered witnesses when Aponte exited the courtroom after testifying. ***Id.*** at 68. According to Officer Santiago, he heard a woman that he did not see, speaking in Spanish to a person later identified as Benesario about "Penn Treaty Park, eating at a fast food place

---

[9] Because Aponte was unavailable to testify at Appellant's second trial, her testimony from the first trial was read into the record.

and a phone[]call received," as well as "using marijuana." *Id.* at 68-69, 77. Officer Santiago testified that Benesario responded to the woman by saying in Spanish, "Should I say that?" or "Should I say that in court?" *Id.* at 69, 78.[10] At Appellant's second trial, Appellant's trial counsel did not object to Officer Santiago's rebuttal testimony, but counsel cross-examined Officer Santiago about what he overheard.

In this appeal, Appellant contends that trial counsel was ineffective for not objecting to Officer Santiago's rebuttal testimony that "Benesario was prompted by the woman as to what to testify to as an alibi witness." Appellant's Brief at 26. Specifically, Appellant argues that "the alleged prompting occurred so far in the past that it would have had no effect on the testimony of [Benesario] at the second trial." *Id.* at 27.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014) (citations omitted).

> [T]he admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. Where the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter

---

[10] Officer Santiago's attention was then diverted by another officer informing him that the trial court was breaking for lunch, at which point he saw the assistant district attorney and notified him of the conversation he overheard. N.T. Trial, 9/12/12, at 69-70.

of right. Rebuttal is proper where facts discrediting the proponent's witnesses have been offered.

***Commonwealth v. Ballard***, 80 A.3d 380, 401-02 (Pa. 2013) (citations omitted and some formatting altered); ***see also U.S. v. Arias-Santos***, 39 F.3d 1070, 1074 (10th Cir. 1994) ("Questions directed at revealing that the testimony of a witness was coached are clearly relevant to a jury's assessment of the reliability of that witness." (citation omitted)); ***U.S. v. Carrillo***, 16 F.3d 1046, 1050 (9th Cir. 1994) ("Coaching is a proper subject of impeachment in cross-examination." (citation omitted)).

Here, the Commonwealth presented Officer Santiago's rebuttal to Benesario's alibi testimony, which the trial court properly admitted as impeachment. ***See Ballard***, 80 A.3d at 401-02; ***see also Arias-Santos***, 39 F.3d at 1074. Further, Appellant did not cite any legal authority for the proposition that Officer Santiago's rebuttal testimony of what he overheard during the first trial should be excluded from Appellant's second trial. Accordingly, Appellant failed to establish the claim has arguable merit and that trial counsel was ineffective for not objecting to Officer Santiago's testimony. ***See Sandusky***, 203 A.3d at 1043-44. For these reasons, because the PCRA court did not err by dismissing Appellant's petition and not ordering an evidentiary hearing, we affirm the order below. ***See Grayson***, 212 A.3d at 1051; ***Smith***, 121 A.3d at 1052.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/20