J-S27009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES LAWRENCE L. KULOW | : | |
| | : | |
| Appellant | : | No. 1873 EDA 2023 |

Appeal from the PCRA Order Entered July 12, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001280-2018

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED MARCH 20, 2025**

Charles Lawrence L. Kulow appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we reverse the order and vacate in part, and affirm in part, the judgment of sentence, relying, in part, on the PCRA court opinion.

We previously summarized the facts of this case as follows:

Philadelphia Police Officer Frank Ray testified that on November 17, 2016, he received a rescue call for a drunk male outside on the 8000 block of Frankford Avenue.  When Officer Ray arrived at 8037 Frankford Avenue, he observed a very tall white male, with a big beard, lying on the sidewalk, bleeding, with vomit coming out of his nose and mouth.  The male was pronounced dead at the scene and later identified as Brian Keith Jones.  Officers recovered a cell phone charger, a marijuana bowl with no marijuana, a lighter, and a few knives from Jones' body.

_____

[*] Former Justice specially assigned to the Superior Court.

While Officer Ray was holding the scene, two women climbed out of a back window of the apartment building that Jones was lying in front of and jumped into the bed of a pickup truck. Officer Ray observed the pickup truck pull off at a high rate of speed. Officer Ray recovered a money clip on the ground in the back of the apartment building. A few minutes after the truck pulled off, a man named Thomas Vendetti walked up to Officer Ray and claimed the money clip was his. Vendetti identified himself as the owner of the pickup truck that had just driven away, and told officers that the truck was currently parked one block away. Vendetti was held for questioning.

* * *

Allen Lazicki testified that on November 17, 2016, he lived in the second[-]floor apartment at 8037 Frankford Avenue. Lazicki lived there with a woman named Christina Leaman, and Leaman's friend, Shannon Burns. On that date, when Lazicki arrived home at 5:35 p.m., Leaman, Burns, Burns' boyfriend (Anthony Felix), and Jones were all present in his apartment. Lazicki greeted everyone in the apartment and headed to the back bedroom to take a nap.

While in his bedroom, Lazicki heard a "bang." Leaman and Burns ran into Lazicki's bedroom. They appeared to be frightened, and told Lazicki that the "bang" was a gunshot. When they left his bedroom, Kulow walked in and said "I'm sorry[,]" and told Lazicki that he shot Jones in the shoulder.

Lazicki testified that Kulow was a member of the Breed Motorcycle Gang. Kulow told Lazicki that he shot Jones because Jones was bragging that Jones was an enforcer with the Breed Motorcycle Gang, when he was not. After Kulow told Lazicki that he shot Jones, Lazicki immediately left the apartment. As he was leaving, he saw Jones sitting in a recliner with his eyes closed and his head laying on his chest. Lazicki did not observe any blood.

Leaman testified that she knew Kulow by his nickname[,] "Ruthless," and knew him to be a member of the Breed Motorcycle Gang. On the day of the murder, at Kulow's request, Leaman contacted Jones and told Jones that Kulow wanted to talk to him. Leaman, Jones, Burns, and Felix were all in Lazicki's apartment when Lazicki arrived home. Shortly after Lazicki arrived, Leaman and Burns went into the bathroom and closed the door. While Leaman was in the bathroom, she heard a "loud pop." Leaman never observed Kulow enter the apartment.

- 2 -

[] When Leaman left the bathroom, she saw Jones sitting in the recliner trying to breathe. Jones was making gurgling noises and couldn't speak. Kulow and another unknown male were standing near Jones. Burns heard Kulow tell Jones "You're no Breed enforcer."

Lazicki and Felix both left the apartment while Jones was still in the recliner. Kulow and the unknown male lifted Jones from the chair[] and placed him on a sheet. The last time Leaman saw Jones, he was on his back being dragged down a flight of stairs, which le[]d to the outside of the apartment building.

Leaman and Burns remained in the apartment and talked about what had happened. While they were talking, they wiped up a "spot" of blood on the floor. Leaman called her friend Vendetti to give her and Burns a ride. Leaman directed Vendetti to come to the back of the apartment building because the police were out front. When Vendetti arrived, Leaman and Burns climbed out of a back window and onto the bed of Vendetti's truck. After they had driven for approximately one to two blocks, Leaman realized that she had dropped her phone. Vendetti pulled over and went back to the crime scene to look for Leaman's phone. Burns left on foot.

While Leaman was in the truck, police arrived and took her to the Homicide Division.

*Commonwealth v. Kulow*, 245 A.3d 1102, at **1-5 (Pa. Super. 2020) (Table) (brackets omitted).

Police arrested Kulow on January 30, 2018, and charged him with murder. On October 29, 2018, following a trial, the jury found Kulow guilty of third-degree murder (18 Pa.C.S.A. § 2502(c)), firearms not to be carried without a license (18 Pa.C.S.A. § 6106), carrying firearms in public in Philadelphia (18 Pa.C.S.A. § 6108), and possession of an instrument of crime (18 Pa.C.S.A. § 907). On February 7, 2019, the Honorable Rose Marie DeFino-Nastasi sentenced Kulow to an aggregate term of 17 to 34 years' incarceration. On direct appeal, we affirmed Kulow's judgment of sentence.

*See Kulow*, *supra*. Kulow did not petition the Pennsylvania Supreme Court for allowance of appeal.

On October 27, 2021, Kulow, *pro se*, filed the instant timely PCRA petition. The PCRA court appointed counsel, and, on April 7, 2022, counsel filed an amended petition. On May 17, 2023, the PCRA court issued notice of its intent to dismiss Kulow's petition without a hearing, stating that the petition raised no claim of arguable merit. *See* Pa.R.Crim.P. 907 Notice, 5/17/23; *see also* Pa.R.Crim.P. 907. The PCRA court dismissed Kulow's petition on July 12, 2023, and Kulow filed a timely notice of appeal. Thereafter, Kulow and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Kulow presents the following issues for our review:

Did the PCRA Court err and/or abuse its discretion when it denied [Kulow's] PCRA petition seeking a new trial, without conducting an evidentiary hearing, based upon a claim that counsel was ineffective for failing to:

a. effectively challenge the sufficiency of the evidence with respect to the conviction for 18 Pa.C.S.A. § 6106 on direct appeal;

b. adequately challenge [] Leaman's inculpatory testimony with readily available evidence that she had multiple pending criminal matters and multiple probationary matters at the time of trial; and,

c. have the jury charged pursuant to Pennsylvania Suggested Standard Jury Instruction (Criminal) 4.01[,] where there was evidence presented that could justify a finding that Commonwealth witnesses [] Leaman and/or [] Burns were accomplices in the crimes charged.

Appellant's Brief, at 4.

The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. **See Commonwealth v. Johnston**, 42 A.3d 1120, 1126 (Pa. Super. 2012). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.** (citation omitted).

On appeal, Kulow argues that the PCRA court erred by dismissing his petition without a hearing because trial counsel was ineffective in three instances, namely, by failing to: (1) effectively challenge the sufficiency of the evidence on direct appeal for Kulow's conviction for firearms not to be carried without a license,[1] since there was insufficient evidence regarding the size of the firearm; (2) sufficiently impeach Leaman's testimony using her probationary status in three criminal cases and her pending status in two additional criminal cases; and (3) failing to request that the jury be charged

---

[1] On appeal, Kulow only raises a challenge to the court's dismissal of his petition in connection with his ineffectiveness claim that counsel failed to challenge the sufficiency of the evidence for his section 6106 conviction. However, in his amended PCRA petition, Kulow also raises an ineffective assistance of counsel claim regarding the failure to challenge his section 6108 conviction on the same basis that he relies upon for his section 6106 challenge. **See** Amended PCRA Petition, 4/7/22, at ¶ 36. Nevertheless, Kulow has abandoned and waived the claim on appeal by failing to raise it either in his Rule 1925(b) statement or in his appellate brief. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Edwards**, 874 A.2d 1192, 1196 (Pa. Super. 2005) (failure to include issue in Rule 1925 statement renders that issue waived on appeal); **see also Commonwealth v. Samuel**, 102 A.3d 1001 (Pa. Super. 2014) (defendant's various appellate challenges deemed waived where brief failed to conform to appellate rules because claims not adequately developed with citation to pertinent facts and authority and/or not raised in statement of questions involved).

with instructions relating to accomplice testimony. *See* Appellant's Brief, at

14. Kulow asserts that these failures, both individually and taken together,

amount to ineffective assistance of counsel, such that his trial would likely

have had a different outcome, but for trial counsel's failures. *Id.* at 15.

When a petitioner claims that he has received ineffective assistance of

counsel, relief will only be granted with a showing, by a preponderance of the

evidence, that:

> his conviction or sentence resulted from the ineffective assistance
> of counsel which, in the circumstances of the particular case, so
> undermined the truth-determining process that no reliable
> adjudication of guilt or innocence could have taken place.
> Generally, counsel's performance is presumed to be
> constitutionally adequate, and counsel will only be deemed
> ineffective upon a sufficient showing by the petitioner. To obtain
> relief, a petitioner must demonstrate that counsel's performance
> was deficient and that the deficiency prejudiced the petitioner. A
> petitioner establishes prejudice when he demonstrates that there
> is a reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different. .
> . . [A] properly pled claim of ineffectiveness posits that: (1) the
> underlying legal issue has arguable merit; (2) counsel's actions
> lacked an objective reasonable basis; and (3) actual prejudice
> befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations,

quotation marks, and brackets omitted); *see also Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984); *Commonwealth v. Pierce*, 527

A.2d 973, 975 (Pa. 1987) (adopting *Strickland*). Further, if any of the three

*Strickland* prongs are not satisfied, the claim fails. *See Commonwealth v.*

*Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

In applying the **Strickland** test, this Court has previously explained that "a claim has arguable merit where the factual averments, if accurate, could establish cause for relief." **Commonwealth v. Colon**, 230 A.3d 368, 374 (Pa. Super. 2020) (citation omitted). Second, "[t]he test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." **Id.** This test is not determined using hindsight, but rather is an analysis of whether counsel's decisions "effectuated his client's interests." **Id.** Finally, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id.**

> Moreover, we recognize:
>
> A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing.

**Commonwealth v. Smith**, 121 A.3d 1049, 1052 (Pa. Super. 2015) (citations, quotation marks, and brackets omitted).

Kulow first claims that trial counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal regarding his

- 7 -

conviction for firearms not to be carried without a license under section 6106. Specifically, Kulow contends that the evidence presented at trial failed to establish the necessary element that the firearm at issue fell within the definition set forth in section 6102 of the Crimes Code[2]. **See** Appellant's Brief, at 20; **see also** 18 Pa.C.S.A. §§ 6102, 6106. Kulow argues that only one witness, Burns, testified as to the existence of any gun, and that she simply stated that she "saw the gun on the other guy ([an unknown male]),"[3] specifically in his front sweatshirt pocket, with the butt of the gun hanging out. **See** N.T. Jury Trial, 10/25/18, at 27, 100; **see also** Appellant's Brief, at 23-24. Kulow contends that this description was "exceedingly vague and general" and, because there was no testimony regarding the length of the barrel or of the gun overall, the evidence was insufficient to support his conviction. Appellant's Brief, at 24.

_____

[2] Section 6102 defines a firearm as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle[,] or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102.

[3] Testimony at trial revealed that there was an unknown individual who joined Kulow at the crime scene and assisted Kulow in moving the victim's body. Burns testified that this unknown person possessed the gun. **See** N.T. Jury Trial, 10/25/18, at 27. The jury viewed surveillance video that captured the unknown individual's arrival at the scene, him assisting Kulow to move the victim after the shooting, and his departure from the scene immediately thereafter. **See** Trial Exhibit C-45.

Further, Kulow argues that, although "direct appellate counsel challenged the sufficiency of evidence on appeal, . . . he never noted the failure to establish the size of the firearm as a ground for his sufficiency challenge." *Id.* at 26. Kulow contends his ineffectiveness claim is meritorious because Burns' testimony failed to establish the length of the firearm and there was no other evidence regarding its size. *Id.* at 28-29, citing ***Commonwealth v. Rapp***, 384 A.2d 961 (Pa. Super. 1978). Next, Kulow suggests that counsel had no reasonable basis for his strategy because the "course pursued" led to Kulow's conviction, despite insufficient evidence to establish every element of the offense beyond a reasonable doubt. *Id.* at 29. Also, Kulow claims that there would have been no adverse impact on his case had counsel pursued the issue of the size of the gun on direct appeal, rather than raising other unsuccessful sufficiency claims. *Id.* Moreover, Kulow argues he has established prejudice because there is a reasonable probability that challenging the sufficiency of the evidence regarding the firearm element would have succeeded on direct appeal. *Id.* at 30.

The PCRA court determined counsel was not ineffective for failing to raise this sufficiency argument on direct appeal because Burns' trial testimony and the surveillance video presented to the jury provided sufficient circumstantial evidence that Kulow possessed a firearm as defined by section 6102. *See* PCRA Court Opinion, 9/22/23, at 7. The PCRA court found a jury could infer that the gun's overall length was less than 26 inches because it could fit in the unidentified male's front sweatshirt pocket, or that,

alternatively, the barrel was less than 15 inches because Burns testified that she only saw the butt of the gun. *Id.* The Commonwealth adopts the PCRA court's analysis in its appellate brief and further argues that because Burns only saw one gun, the jury could reasonably infer that Kulow either used that gun or another firearm small enough to be concealed on his person, thus meeting the definition of a firearm pursuant to section 6102. *See* Commonwealth's Brief, at 8.

In *Commonwealth v. Lopez*, 565 A.2d 437 (Pa. 1989), our Supreme Court set forth the three elements that the Commonwealth must prove beyond a reasonable doubt to convict an accused of firearms not to be carried without a license: "(a) that the weapon was a firearm; (b) that the firearm was unlicensed; and (c) that where the firearm was concealed on or about the person, it must be outside his home or place of business." *Id.* at 439 (citations and emphasis omitted). Section 6102 of the Pennsylvania Crimes Code defines a firearm as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle[,] or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102.

It is beyond cavil that the Commonwealth may meet its "burden of proving every element of the crime by utilizing only circumstantial evidence." *Commonwealth v. Riley*, 302 A.3d 112, 115 (Pa. Super. 2023), citing *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007). Indeed, this Court has specifically noted that "[l]ength of a firearm may be proven by

direct and/or circumstantial evidence." ***Commonwealth v. Freeman***, 256 A.3d 34, at \*25 (Pa. Super. 2021) (Table),[4] citing ***Commonwealth v. Rozplochi***, 561 A.2d 25, 31 (Pa. Super. 1989). Further, the Commonwealth need not establish the defendant's guilt to a mathematical certainty, and, as verdict winner, it is entitled to all favorable inferences that may be drawn from the evidence. ***See Commonwealth v. McFadden***, 850 A.2d 1290, 1293 (Pa. Super. 2004). Nevertheless, "a conviction must be based on more than mere suspicion or conjecture." ***Id.*** (citation and quotation marks omitted). "When circumstantial evidence is used to establish an essential element of the crime, that element must flow beyond a reasonable doubt from the proven circumstances." ***Commonwealth v. Quartapella***, 539 A.2d 855, 857 (Pa. Super. 1988).

In ***Commonwealth v. Todd***, 384 A.2d 1215 (Pa. 1978), *superseded by statute*, Pennsylvania Uniform Firearms Act of 1995, P.L.1024, No.17 (UFA), *as recognized in* ***Commonwealth v. Gillepsie***, 821 A.2d 1221, 1225 (Pa. 2003), our Supreme Court found that the Commonwealth's evidence was insufficient to prove violations of the UFA (VUFA) because the only evidence of the size of the gun was a description by a criminologist who examined a bullet but could not testify as to the length of the gun's barrel. ***See id.*** at 1217-18; ***cf. Commonwealth v. Jennings***, 427 A.2d 231, 235 (Pa. Super.

---

[4] Unpublished non-precedential decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value. ***See*** Pa.R.A.P. 126(b).

1981) (evidence sufficient where gun admitted into evidence and available to jury). Similarly, our Court has previously found that there was insufficient evidence to prove a VUFA, where there was no record evidence regarding the length of the gun used, and the gun itself, though known to be a shotgun of a specific make and model, was never produced or entered into evidence. **See Rapp**, **supra** at 962. Likewise, in **Freeman**, **supra**, we found that recanted testimony that the appellant shot the victim with a silver revolver was insufficient without either the gun itself or a further description of the barrel length. **Id.** at * 27-28; **see also In the Interest of J.K.**, 313 A.3d 186, at **11-12 (Pa. Super. 2024) (Table) (evidence insufficient where record devoid of testimony of length of barrel aside from testimony that gun was black with laser affixed); **cf. Commonwealth v. Bush**, 222 A.3d 843, at **8-9 (Pa. Super. 2019) (Table) (sufficient circumstantial evidence established barrel length because Commonwealth adduced testimony about "audible click" heard by victim of attempted shooting, ballistics analysis that empty shell casings and audible click consistent with specific style of small handgun, and where jury able to observe example of such small handgun).

Upon our review of the record, there is no testimony or other evidence about the type of gun Burns observed in the unknown male's front sweatshirt pocket, no gun was recovered or entered into evidence,[5] and no gun was

---

[5] Philadelphia Police Officer Christopher Reed also testified that no ballistic evidence was recovered at the scene. **See** N.T. Jury Trial, 10/24/18, at 41, 49.

observable in any surveillance videos.[6]  Importantly, there was no evidence as to the size—either barrel length or overall length—of the gun except that it was in the unknown male's front sweatshirt pocket and the butt was "hanging out" of it.  N.T. Jury Trial, 10/25/18, at 27.  Further, there was no evidence regarding the size or any measurements of the unknown male, his sweatshirt, or the front pocket.  In any event, after our review of the trial testimony, surveillance video depicting the unknown male, and considering the record as a whole, this Court cannot say that a jury could reasonably conclude the gun was less than 26 inches long overall, or that the barrel was less than 15 inches. *See Todd*, *supra*; *Rapp*, *supra*.  Thus, we conclude that Kulow's claim has arguable merit.  Also, we can discern no reasonable basis for counsel's failure to raise such a claim on direct appeal, and we agree that actual prejudice befell Kulow as a consequence of counsel's omission because Kulow's conviction under section 6106 was affirmed on direct appeal.  *See Johnson*, *supra*.  Accordingly, we conclude that the PCRA court erred in denying relief on Kulow's claim that counsel was ineffective for failing to challenge the sufficiency of his section 6106 conviction.  *Id.*  Therefore, we must reverse the order of the PCRA court and vacate that conviction.

_____

[6] The PCRA court suggests that the video provided by the Commonwealth showing the unidentified male wearing a sweatshirt is sufficient for the jury to estimate the size of the gun.  *See* PCRA Court Opinion, 9/22/23, at 7.  However, the video does not show the gun in the sweatshirt and there was no testimony or other record evidence about the estimated height of the male, the size of the sweatshirt pocket, or how much of the butt of the gun was outside the sweatshirt.  *See* Commonwealth's Exhibit C-45; *see also generally* N.T. Jury Trial, 10/24/18-10/29/18.

We next address Kulow's second and third claims on appeal together, though they are unrelated, because we rely on the well-reasoned opinion of the PCRA court in disposing of both of those claims.

In his second claim on appeal, Kulow argues that trial counsel was ineffective for failing to impeach Leaman using her status as a probationer in three cases as well as her status as the defendant in two other pending criminal cases. *See* Appellant's Brief, at 31-34. Kulow claims that, although trial counsel did submit to the jury evidence of Leaman's 2010 conviction of retail theft—a *crimen falsi* conviction—and questioned both Burns and Vendetti about Leaman's drug involvement, this was insufficient impeachment evidence, especially given the importance of Leaman's testimony to the Commonwealth's case. Kulow contends that Leaman's testimony was "centrally important" because the Commonwealth referred to Leaman many times, and relied significantly on her testimony, during closing argument. Further, Kulow suggests that the jury's request to review Leaman's statement during deliberations supports his argument that Leaman's testimony was critical. Kulow also takes issue with the Commonwealth's suggestion that the testimony of Lazicki and Burns was of equal importance to Leaman's. Specifically, Kulow notes that this suggestion is belied by the Commonwealth's own closing argument, wherein the prosecutor stated, "Shannon Burns lied[,]" N.T. Jury Trial, 10/26/18, at 156, and referred to Lazicki as "a simpleton, if you want to call him that. If you want to call him a liar." *Id.* at 161.

Kulow contends his ineffectiveness claim is meritorious because: (1) trial counsel ignored evidence that could be used to impeach Leaman's credibility; (2) Leaman's active criminal cases and history were readily available at the time of trial; and (3) the information would have aided the defense theory and "rebutted the Commonwealth's theory . . . that [Kulow] shot the decedent." *Id.* at 37-38, citing *Commonwealth v. Borders*, 560 A.2d 758, 759 (Pa. 1989). Kulow argues that there would have been "no conceivable adverse impact" had trial counsel presented the impeachment evidence, thus, there was no reasonable basis for counsel to fail to present it. Appellant's Brief, at 40. Finally, Kulow maintains that the introduction of this impeachment evidence would have eroded the jury's confidence in the Commonwealth's case such that "at least one juror would have . . . possessed a reasonable doubt [] before returning a verdict of guilty[.]" *Id.* at 41-42.

> The scope and limits of cross-examination are largely within the discretion of the trial court and its actions pertaining thereto will not be reversed in the absence of a clear abuse of its discretion or error of law. Nevertheless, criminal defendants have a constitutional right to confront witnesses against them, which includes the right to cross-examine. Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying. It is well established that a witness may be cross-examined as to any matter tending to show the interest or bias of that witness. It is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity be afforded to demonstrate through cross-examination that the witness is biased.

*Commonwealth v. Buksa*, 655 A.2d 576, 579-80 (Pa. Super. 1995) (citations and quotation marks omitted). Further, in *Commonwealth v.*

*Evans*, 512 A.2d 626 (Pa. 1986), our Supreme Court explained the importance of providing the jury with evidence of a witness' bias in favor of the prosecution:

> whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.

*Id.* at 631-32.

In his third claim on appeal, Kulow argues that trial counsel was ineffective for failing to request that the jury be instructed that if it found Leaman or Burns to be an accomplice, their testimony should be viewed with disfavor because that testimony "comes from a corrupt and polluted source[.]" Appellant's Brief, at 47.

Our standard of review for challenges to jury instructions is well-settled:

> We review a challenge to a jury instruction for an abuse of discretion or an error of law. We must consider the charge as a whole, rather than isolated fragments. We examine the entire instruction against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said. Furthermore, our trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld so long as they clearly and accurately present the law to the jury for its consideration. The

- 16 -

trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

**Commonwealth v. Rush**, 162 A.3d 530, 540 (Pa. Super. 2017) (citations, quotation marks, and brackets omitted). In addition, "[d]efendants are generally entitled to instructions that they have requested and that are supported by the evidence." **Commonwealth v. Hairston**, 84 A.3d 657, 668 (Pa. 2014). However, a defendant "may not claim entitlement to an instruction that has no basis in the evidence presented during trial." **Id.** (citation and quotation marks omitted).

The Pennsylvania Criminal Code defines an accomplice as follows:

**(c) Accomplice defined. —** A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. 306(c).

"[T]o be an accomplice[,] one must have knowledge of, and participate in, the specific crime charged." **Commonwealth v. Thomas**, 387 A.2d 820, 822 (Pa. 1978). An accomplice is someone who is more than simply present at the scene of the crime, rather there must be "evidence indicating participation in the crime[.]" **Commonwealth v. Keblitis**, 456 A.2d 149,

151 (Pa. 1983). Additionally, "[a]n accessory after the fact is not an accomplice." *Commonwealth v. Hackett*, 627 A.2d 719, 725 (Pa. 1993).

The PCRA Court provides a thorough and well-reasoned discussion explaining why both of Kulow's second and third claims on appeal are without merit. *See* PCRA Court Opinion, 9/22/23, at 7-11 (finding Kulow failed to establish prejudice because Kulow's convictions not dependent on Leaman's testimony since both Burns and Lazicki provided consistent testimony that Kulow shot Jones, trial counsel otherwise attacked Leaman's credibility by submitting evidence of Leaman's prior *crimen falsi* conviction, and court charged jury on how conviction affected her credibility; and finding no record evidence to indicate Leaman or Burns assisted in planning or committing murder such that instruction not supported). Because we agree with the sound analysis set forth by Judge DeFino-Nastasi in her opinion, we adopt the PCRA court's analysis to dispose of Kulow's claims of ineffective assistance of counsel for failure to adequately impeach Leaman and failure to request jury instructions on accomplice testimony. *See Buksa*, *supra*; *Rush*, *supra*. We instruct the parties to attach a copy of Judge DeFino-Nastasi's decision in the event of further proceedings.

In sum, because we conclude that the PCRA court erred with respect to Kulow's first claim—counsel's failure to challenge the sufficiency of the evidence on direct appeal for Kulow's VUFA of section 6106—we reverse the court's order denying his petition. We vacate Kulow's section 6106 conviction only, and discharge him solely on that charge, because we conclude that it

- 18 -

was the Commonwealth's burden to establish the elements of that crime at trial, but it failed to do so. **See** 42 Pa.C.S.A. § 9546 ("If the court rules in favor of the petitioner, it shall order appropriate relief and issue supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence or other matters that are necessary and proper."); **see also Commonwealth v. Yanoff**, 690 A.2d 260, 263 (Pa. Super. 1997) (proper remedy for successful sufficiency claim is discharge, not new trial). **see also Commonwealth v. Young**, 35 A.3d 54, 64 (Pa. Super. 2011) ("Generally, when a petitioner is granted PCRA relief for ineffective assistance of counsel, a new trial is granted," but not in all cases). Because the sentence for Kulow's vacated conviction was ordered to run concurrent to his other sentences, and the overall length of his aggregate sentence remains unchanged, we need not remand for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 570 (Pa. Super. 2006) (vacation of unlawful, concurrent sentence, which does not disturb sentencing scheme or aggregate length of sentence, does not require remand for resentencing).

Order reversed. Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Stevens, P.J.E., joins this Memorandum.

Nichols, J., files a Concurring Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/20/2025